GEORGE B. HARRISON, *et al.*

**v.**

THE CITY OF HUNTINGTON, A MUNICIPAL CORPORATION, *et al.*

(No. 10815)

*and*

GEORGE B. HARRISON, *et al.*

**v.**

THE CITY OF HUNTINGTON, A MUNICIPAL CORPORATION, *et al.*

(No. 10816)

Submitted April 25, 1956.        Decided June 12, 1956.

*Brown, Beckett & Burford,* for appellant, Nichols & Ronk, Inc.

*Ducker, Keadle & McCreight,* for appellant, Middle States Asphalt Corp.

*Eward H. Greene, Claude M. Morgan,* for appellees.

GIVEN, JUDGE:

Plaintiffs George B. Harrison, O. H. Hines, John H. Druen and Eugene T. Brennan, as residents and taxpayers of the City of Huntington, instituted their suit against defendants, the City of Huntington, George E. Theurer as Mayor, Nichols & Ronk, Inc., and Middle States Asphalt Corporation, the last named two defendants being paving contractors, praying an injunction restraining defendants from paving certain streets in the City of Huntington, as required by certain contracts entered into between the city and the contractors. The Circuit Court of Cabell County, by order of November 18, 1955, perpetuated a temporary injunction previously awarded, granting the relief sought. Separate appeals from the final order were granted defendant contractors by this Court, which appeals were consolidated and are heard together.

The voters of the City of Huntington, on July 7, 1955, authorized the issuance of bonds, in the amount of $650,-000.00 for the improvement of certain streets within the city. After the preparation of plans and specifications and the advertising for bids, two bids were received, one

from each of the contractors named above, each for approximately one half of the amount of the work to be done. At a regular meeting of the City Council of the City of Huntington, held on September 12, 1955, the council rejected the bids. The original specifications required that the contractor to whom the contract might be awarded should commence work thereunder within ten days from the date of the contract, and complete such work within sixty days. Before the date fixed in the advertisement for the opening of the bids, the city, acting through its city engineer, who was responsible for the preparation of the plans and specifications, authorized or directed a change in such plans or specifications whereby the time to be allowed for the completion of the performance of the contract was changed from "sixty days from date of award", to read "sixty working days from date of award". The wording of the amendment was carried into the contracts executed between the city and the defendant contractors. All contractors who contemplated bidding on the proposed improvements, and who received from the city officials copies of the plans and specifications, were notified of the authorization of such amendment. Three days later, September 15, 1955, by notice signed by three members of the city council, a special meeting of the city council was called for September 19, 1955. The purposes for which the meeting was called, as stated in the notices, were: "1. To reconsider the action taken on Monday, September 12, 1955, on the motion to reject the bids which were made September 10, 1955, and readvertise for new bids with the time limit taken out and new bids to read thirty days to move in, do what work to be done this fall and a time limit of July 31, 1956, to have the job finished. 2. To reconsider the report from the City Engineer on bids received on September 10, 1955, for paving various projects under the Street Improvement Program. 3. To take whatever action may be deemed necessary to effect the acceptance of bids and the letting of contracts for paving the various projects under the Street Improvement Program."

At the special meeting a motion was made "that the action of Council taken on September 12, 1955, to reject the bids received September 10, 1955, and readvertise for new bids with the time limit taken out, new bids to read 30 days to move in and go to work, do what can be done this fall and a time limit of July 31, 1956, to have the job completed be rescinded, repealed, nullified, and vacated." The motion was duly seconded and carried by a vote of eight to four, one member being absent. After further consideration of business before the council, a motion was made, duly seconded, that "the report of the City Engineer be accepted and that the low bids submitted September 10, 1955, for paving various projects under the Street Improvement Program be accepted and that Middle States Asphalt Corporation of Ashland, Kentucky, be awarded the contract on designated Group No. 2 and the bid of $342,302.43 be accepted; and Nichols & Ronk be awarded the contract on designated Group No. 1 and the bid of $299,749.77 be accepted." The motion carried by a vote of eight to four, one member being absent. Subsequently, the contracts here involved were executed by the city and the defendant contractors.

The grounds of attack on the contracts are that there was collusive action on the part of certain city officials and bidders which stifled competitive bidding, thus rendering the contracts fraudulent and void; that the amendment authorized to be made in the specifications, whereby the contractor was given "60 working days" instead of "sixty days" to complete the work to be performed, was such a material change as to render the contracts void; and that the council having once rejected the bids, it could not, at a later meeting thereof, by a motion to reconsider, annul the action of the council whereby the bids were rejected, and thereafter authorize the acceptance of the bids.

The trial chancellor found that plaintiffs "failed to prove collusion", and failed to prove that any officer or

agent of the City of Huntington had "intentionally or otherwise imposed restrictions on bidding for the purpose of giving the contract to the defendants" to whom the contracts were let, and that plaintiffs had "failed to prove that the changes in the plans and specifications from sixty days to sixty working days was a material change or that such change prevented or discouraged competitive bidding." The findings are clearly supported by the evidence, and preclude a reconsideration thereof by this Court.

The position of plaintiffs, that the contracts are *ultra vires* and void, is based, principally at least, on the nature of the motion by which the city council attempted to annul its own prior action in rejecting the bids at the council meeting of September 12, 1955. They contend that the motion was a motion to reconsider, and that the council, because of parliamentary rules by which it was bound, was without power to entertain such a motion, unless made by a member of the council who had voted with the prevailing side, and unless made at the same council meeting at which the vote on the original motion was taken. The argument supporting plaintiffs' position is based largely on the use of the word "reconsider" in the notice, quoted above, calling the special council meetting. Plaintiffs point out that by an ordinance of the City of Huntington it is provided: "In all cases, a motion to reconsider will be entertained only when made by a member who voted with the prevailing side. A majority of those present can consider any vote, but the motion to do so shall be made at the same session of the Council during which such vote was taken." It is also pointed out that an ordinance of the City of Huntington provides: "The proceedings of the Council, except as otherwise provided for, shall be governed by Karcher's Handbook of Parliamentary Law". In so far as pertinent, the provisions of Karcher's Handbook of Parliamentary Law read: "TO RESCIND This motion is not in frequent use. As its name implies, its purpose is to cancel out or nullify some prior action of the assem-

bly. This motion is a rather drastic one and in many instances requires prior notice to the members. It is in the same classification with a motion which attempts to amend some previous motion already adopted which substantially changes the character or purpose of the original motion, and under the circumstances, the motion to rescind is subject to the same limitations that any special rules of order may place on amendments of this nature.

"The usual phraseology of the motion is, 'I move that the action of this body in doing thus and so be rescinded.' Other words which may be used instead of the word 'rescind' are, 'repeal' or 'annul.' In parliamentary procedure these words are considered as having the same practical meaning.

"TO RECONSIDER The motion to reconsider is unusual in many respects. The motion to reconsider itself, is a rather high ranking one from the standpoint of privilege and precedence, but the consideration of the motion in itself does not enjoy the same privilege of precedence but only the privilege or precedence of the motion which is to be reconsidered.

"The primary points to bear in mind with reference to this motion are the following: 1. It must be moved on the same day or the next day following on which the vote to be reconsidered was taken. 2. It can only be made by a member who voted with the winning side on the question to be reconsidered. 3. Any member, however, may second it. 4. The motion is in order even when other questions are pending. 5. The motion may be made even when another member has the floor."

The purpose of the notice calling the special meeting was not to limit or define the type of motion to be made before the council, but to inform the members of the council as to the time and place of the special meeting to be held and the nature of the business to be transacted at that meeting. As to such purposes, no question is, or reasonably could be, raised. It is true that in the first

and second paragraphs of the notice the word "reconsider" is used. As used, however, it relates to the business to be transacted, not to the type of motion to be made. The rules which plaintiffs would invoke to sustain their contention as to the invalidity of the action of the council apply only to the one type of motion, a "motion to reconsider". The motion actually made and acted on was not a "motion to reconsider", but a motion "that the action of council taken on September 12, 1955 * * * be rescinded, repealed, nullified, and vacated". It seems clear to us, therefore, that the motion made and acted on, whereby the previous action of the council in rejecting the bids was vacated, was not in conflict with, nor violative of, any pertinent parliamentary rule. This being true, we do not reach any of the questions attempted to be raised as to the invalidity of an ordinance passed in violation of a parliamentary rule of procedure.

The power of the city council at the special meeting, to vacate or annul its prior action whereby the bids were rejected, appears not to be, and we believe can not be, seriously questioned. Under its charter, the city, through its council, had the right, power and duty to improve its streets in such manner as was deemed for the best interests of its citizens, including power to pay for the same through issuance of bonds, when duly authorized, and power to accept or reject bids received in accordance with plans or specifications prepared by its officers or agents. Wide discretion in such matters is vested in the city council. In 63 C.J.S., Municipal Corporations, Section 1005, it is stated: "The action of a municipality in accepting or rejecting bids in the exercise of its discretion will not be reviewed by the courts unless it is necessary to prevent fraud, violation of trust, injustice, or abuse of discretion; but the good faith and honesty of the award are the determining factors, and the courts may compel municipal officials to act in good faith in awarding contracts on competitive bidding. In proceedings challenging an award, the burden of proving bad faith or dishonesty on the part of governing officials is

on plaintiff; and every presumption will be indulged in favor of the honesty of the municipal officers in awarding municipal contracts." See *Lucas* v. *Town of Belhaven*, 175 N. C. 124, 95 S. E. 41; *Dal Maso* v. *Board of County Commissioners of Prince George's County*, 182 Md. 200, 34 A. 2d 464; *Central Veterans' Assn. of Stamford, Conn.* v. *City of Stamford*, 140 Conn. 451, 101 A. 2d 281; *People ex rel. MacMahon* v. *Davis*, 284 Ill. 439, 120 N. E. 326; *Ross* v. *Stackhouse*, 114 Ind. 200, 16 N. E. 501; 37 Am. Jur., Municipal Corporations, Section 150; 4 McQuillin, Municipal Corporations, Section 13.42.

Plaintiffs rely heavily on the holding of this Court in *Hukle* v. *City of Huntington*, 134 W. Va. 249, 58 S. E. 2d 780. While the case is very helpful in the appraisal of the rights or powers of the council of the municipality with reference to repeal or suspension of ordinances previously enforced, we think it not controlling of the principles involved in the instant case. The facts in the two cases are different in effect. In the *Hukle* case, an attempt was made to repeal or suspend an ordinance in full force "by mere motion or resolution * * *". The Court stated that "A suspension, to be effective, was necessarily required to have been by an instrument of equal dignity, i. e., an ordinance". In the instant case, the motions made and carried at the special meeting of the council were of equal dignity with the motions annulled or vacated.

Defendants complain of the action of the trial court in fixing the penalty of the preliminary injunction bond at one thousand dollars, pointing out that affidavits filed indicated that a much larger amount of damages would accrue to defendants, should they be restrained from proceeding with the performance of the contracts. We are of the view that the circuit court acted within its discretionary powers in fixing the amount of the penalty. The record discloses that the temporary injunction was awarded only a few days before the entry of the order granting the permanent injunction, and that on the state

of the pleadings, and other parts of the record, the parties were advised at that time that the temporary injunction would probably be perpetuated about the date the final order was entered. Consequently, in view of the fact it was understood that the preliminary injunction was to be in effect only a few days, we can not say that the trial court erred in fixing the amount of the bond.

It necessarily follows that the action of the Circuit Court of Cabell County, in perpetuating the temporary injunction and in enjoining and restraining defendants from carrying out the provisions of the two contracts, or either of them, in accordance with the terms thereof, must be reversed, and the cause must be remanded with directions to that court to dissolve the temporary and permanent injunctions heretofore awarded by that court.

*Reversed; remanded with directions.*