[Civ. No. 58400. Second Dist., Div. Two. Nov. 18, 1980.]

EDWARD N. SMART, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Fadem, Berger & Norton, Michael M. Berger and Richard D. Norton for Plaintiff and Appellant.

Burt Pines, City Attorney, James H. Pearson, Assistant City Attorney, and James L. Spitser, Deputy City Attorney, for Defendant and Respondent.

OPINION

COMPTON, J.—Plaintiff, owner of a vacant parcel of land located near Los Angeles International Airport, brought an action for inverse condemnation and nuisance against the City of Los Angeles (City) based on a reduction in value of the property resulting from the over-flight of jet aircraft. By stipulation the trial was bifurcated and the issue of liability was tried first. The City stipulated that the plaintiff, in fact, had suffered damages.

The trial court found that the cause of action for inverse condemnation was barred due to the running of the applicable statute of limitations period and that federal preemption of the field of regulating navigable air space precluded a cause of action for nuisance. Judgment was entered in favor of City. We reverse.

The property involved has been owned by members of plaintiff's family since the turn of the century. Plaintiff inherited it from his father in 1971. The land lies under the landing path approaching the south runway at Los Angeles International Airport, which runway has been used primarily for jet aircraft since 1959.

In 1960, a home situated on the property was burned to the ground and the land has remained vacant ever since. In 1972, plaintiff discovered that the property had been "red-lined" by lending institutions, when a prospective buyer was refused financing because of the land's

exposure to the high level of noise generated by the overflying jet aircraft.[1]

In February of 1973, plaintiff filed, with the City, a claim for taking of private property, which claim was denied. In July of that year, he instituted the present action.

### INVERSE CONDEMNATION

The trial court found that, despite the City's stipulation that Smart had suffered damage to his property as a result of the overflights, the action was filed more than five years after the accrual of the cause of action for inverse condemnation.[2]

In fixing the date of accrual of a cause of action for inverse condemnation, courts have generally used the "date of stabilization" approach (*Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282, 291 [74 Cal.Rptr. 521, 449 P.2d 737]; *Aaron* v. *City of Los Angeles* (1974) 40 Cal.App.3d 471, 492 [115 Cal.Rptr. 162]). This method measures the date of the governmental "taking" as of the point in time when the damaging activity has reached a level which substantially interferes with the owner's use and enjoyment of his property. (*Aaron* v. *City of Los Angeles, supra.*)

In the instant case, the "date of stabilization" of the aircraft noise was found by the trial court to be 1966. The court arrived at this finding through use of certain statistical data prepared by an acoustical

---

[1]"Red-lining" refers to the practice of refusing to lend money on property in a certain designated area for reasons having to do with the property location rather than credit status of the borrower.

[2]Code of Civil Procedure, sections 318 and 319 read as follows: Section 318: "Seizin within five years, when necessary in action for real property. No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action.'

Section 319: "Such seizin when necessary in action or defense arising out of title to or rents or real property. No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out of the same, can be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted, or the defense is made, or the ancestor, predecessor, or grantor of such person was seized or possessed of the premises in question within five years before the commencement of the Act in respect to which such action is prosecuted or defense made."

consulting firm, which depicted the number of daily jet landings at the south runway from 1960-1976, and the noise level impact of the aircraft during selected years between 1960 and 1977.[3]

This statistical data is an enlargement of an earlier study covering the years 1960-1965, which was relied upon by the trial court in *Aaron v. City of Los Angeles, supra*, 40 Cal.App.3d 471.[4] That case was an airport noise-inverse condemnation action brought by several hundred owners of individual parcels of residential property located in the same general vicinity as plaintiff Smart's land.

The trial court in *Aaron* awarded damages for the reduction in the market value of the plaintiffs' property, after finding that the "date of stabilization" of the aircraft noise was May 1963. The Court of Appeal affirmed, holding that even though some neighboring homeowners had consulted legal counsel and property appraisal experts as early as 1962, the plaintiffs' cause of action did not accrue until 1963, when the noise reached a level which actually and substantially interfered with the use and enjoyment of their homes. (*Aaron, supra*, 40 Cal.App.3d at p. 492.)

Since the property involved in the present case lies within the immediate vicinity of the residential homes in *Aaron* the trial court felt it proper to use the "date of stabilization" standard used in that earlier case.[5] ■ Plaintiff, however, objects to the application of the "date of stabilization" approach to his particular situation, on the basis that unlike the plaintiffs in *Aaron*, he did not suffer a definite and substantial interference with the use and enjoyment of his *vacant* property until 1972, when his attempt to sell the land was frustrated as a result of the "red-lining" by lending institutions. Thus the issue here is whether an actionable invasion of property rights amounting to a government taking or damaging necessarily occurs at the point at which the noise from aircraft flying over vacant land has "stabilized."

[3] The noise level impact was calculated under two types of measurement, the Noise Exposure Forecast (NEF) and the Community Noise Exposure Level (CNEL). Both the NEF and the CNEL indicate that the noise from overflying aircraft reached its peak in 1966, even though the number of daily jet landings at the south runway complex did not peak until 1973.

[4] The court in the instant case took judicial notice of the trial court's memorandum opinion in *Aaron*.

[5] It would appear that the reason for the trial court's determination that Smart's cause of action occurred in 1966, rather than in 1963, is due to the fact that the statistics used in the present case reflect additional years beyond those considered in *Aaron*.

As our Supreme Court has pointed out: "...the designation of a date upon which the statute of limitations begins to run in airport overflight and inverse condemnation suits is difficult since typically no single date can be fixed upon which a constitutional 'taking' or 'damaging' has clearly occurred. (See, e.g. *Aaron* v. *City of Los Angeles* (1974) 40 Cal.App.3d 471, 491-492...; *Jensen* v. *United States* (9th Cir. 1962) 305 F.2d 444, 447.)...a great variety of factors may be considered, including ""the frequency and level of the flights; the type of planes; the accompanying effects, such as noise and falling objects; the *uses* of the property; the effect on values;...and the impact upon animals and vegetable life."" (*Britt* v. *Superior Court* (1978) 20 Cal.App.3d 844, fn. 4 [143 Cal.Rptr. 695, 574 P.2d 766], citing *Aaron, supra*, at pp. 491-492.) (Italics added.)

In *Drennen* v. *County of Ventura* (1974) 38 Cal.App.3d 84 [112 Cal.Rptr. 907], plaintiffs, owners of vacant land lying next to Ventura Airport, brought an inverse condemnation against the county. The county successfully defended on the theory that the previous operators of the airport had acquired a prescriptive avigation easement over the plaintiffs' property. The Court of Appeal reversed, holding that, assuming an avigation easement could be acquired by prescription in California, such acquisition had not occurred. The court reasoned that "...the overflight of aircraft during the claimed prescriptive period manifestly did not interfere substantially with plaintiffs' actual use and enjoyment of their land since there was no such use and enjoyment. Therefore, the overflights did not invade plaintiffs' rights in their land. This being so, no prescriptive easement to overfly plaintiffs' land was acquired."[6]

---

[6]With respect to the law regarding trespass over land, an interference with actual use of the property is required. (Rest. 2d Torts, § 159, (1) and (2); (com. k.): "§ 159. Intrusions Upon, Beneath, and Above Surface of Earth: (1) Except as stated in Subsection (2), a trespass may be committed on, beneath, or above the surface of the earth. (2) Flight by aircraft in the air space above the land of another is a trespass if, but only if, (a) it enters into the immediate reaches of the air space next to the land, and (b) it interferes substantially with the other's use and enjoyment of his land."

"k: The actual holding in the Causby Case [*United States* v. *Causby* (1946) 328 U.S. 256 (90 L.Ed. 1206, 66 S.Ct. 1062)] was that the rights of the landowner were invaded, and there was a wrongful 'taking' of his property, when the flights into the 'immediate reaches' of the air space substantially interfered with his use of the land. Subsequent Federal cases have limited the trespass liability to such cases, so that, even though there is a flight below the prescribed minimum altitude, there is no trespass unless there is such interference with actual, as distinguished from potential, use."

We are of the opinion that under the circumstances present in the instant case the rationale of *Drennen* should be applied in establishing a date of accrual of plaintiff's cause of action.

Here, as in *Drennen*, the overflight of the aircraft was not inconsistent with the character of the land as an unused vacant lot. Aircraft noise over plaintiff's property did not alter or damage the physical characteristics of the land. Nor did it interfere with the use then being made of the property. The reduction in the value of the property did not have a substantial impact upon plaintiff until he attempted to sell.

The City, citing *Mehl* v. *People* ex rel. *Dept. of Pub. Wks* (1975) 13 Cal.3d 710 [119 Cal.Rptr. 625, 532 P.2d 489], argues that since the damage incurred by plaintiff as a result of the aircraft noise would have been sufficiently appreciable to a reasonable person by 1966, the date of stabilization, plaintiff's cause of action could have accrued no later than that year. We disagree.

In our opinion the aircraft overflight noise did not cause a substantial interference with plaintiff's *actual* use and enjoyment of the land until he attempted to sell it, thus his cause of action did not accrue until his discovery of the "red-lining" in 1972.

To hold otherwise would be to assume as a matter of law an injury to a plaintiff's interest in property occurs as soon as a governmental activity reaches a stabilizing point, regardless of the fact that the actual impairment of the property interest does not occur until a later date. Such an assumption would not comport with the rule in inverse condemnation that each such action must be examined on its own to determine what results "'. . ."justice and fairness". . .'" require. (*Kaiser Aetna* v. *United States* (1979) 444 U.S. 164, 174 [62 L.Ed.2d 332, 343, 100 S.Ct. 383].)

Thus, while the "date of stabilization" approach may be a sound method for determining a date of "taking" in a case involving residential landowners, it does not fairly address the situation of the property owner who does not experience the impact of the governmental activity until sometime after that activity has peaked. It is by focusing on the impact of the governmental activity upon the property owner's *actual* use that the courts have determined a date of "taking" in inverse condemnation actions. (*Pierpont Inn, Inc.* v. *State of California, supra*, 70

Cal.2d 282, 286; *Aaron* v. *City of Los Angeles, supra,* 40 Cal.App.3d 471, 492; *Britt* v. *Superior Court, supra,* 20 Cal.3d 844, 860, fn. 4.)

In our rejection of the "date of stabilization" approach to the fixing of a date of taking in this particular case, we merely recognize that property owners may be damaged by a given governmental activity in different ways and at different times.

NUISANCE

The trial court found that plaintiff's nuisance cause of action was barred by reason of federal preemption of air space regulation. ■ Since the rendition of judgment in this case, the California Supreme Court has squarely addressed this question, holding that a nuisance cause of action brought against a municipality for personal injuries and emotional distress caused by aircraft noise is *not* barred by federal preemption. (*Greater Westchester Homeowners Assn.* v. *City of Los Angeles,* 26 Cal.3d 86 [160 Cal.Rptr. 733, 603 P.2d 1329], cert. den. Oct. 6, 1980, 449 U.S. 820 [66 L.Ed.2d 22, 101 S.Ct. 77].) Since *Greater Westchester* makes it clear that plaintiff's nuisance cause of action is not precluded simply by virtue of federal regulation of the area, we omit discussion of that aspect of the trial court's judgment, other than to hold that preemption is no bar to plaintiff's recovery.

As noted earlier, the parties stipulated that Smart had suffered damage to his property value as a result of the overflight of aircraft. ■ The City maintains, however, that plaintiff may not recover under a nuisance theory for property damages resulting from jet aircraft operations. The City contends that: (1) allowing plaintiff to recover under a nuisance theory in the same action in which inverse condemnation is also alleged would give him "two bites of the apple," and (2) recovery in a nuisance cause of action stemming from aircraft operations is instead limited to damages for personal injury and emotional distress. We reject both of those contentions.

Plaintiff, although of course entitled to only one recovery, is entitled to several "bites of the apple," and may proceed upon various legal theories in his attempt to prove the City's liability for his damages. (*Reinking* v. *County of Orange* (1970) 9 Cal.App.3d 1024 [88 Cal. Rptr. 695].) Likewise, damages recoverable by a plaintiff in a successful nuisance action for injuries to real property include diminution of the land's value as well as damages for annoyance, inconvenience and

discomfort. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].)

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Fleming, Acting P. J., and Beach, J. concurred.

A petition for a rehearing was denied December 5, 1980, and respondent's petition for a hearing by the Supreme Court was denied February 11, 1981.