JOHN M. STICKLEN *and* WILLIAM DYKE

*v.*

ROBERT KITTLE, THE BOARD OF EDUCATION OF THE

COUNTY OF KANAWHA, HARRY A. WALLACE, III

MATTHEW KINSOLVING, PAUL LEARY,

ROSEANNA YOUNG *and* STUART CALWELL, JR.

*and*

CENTRAL WEST VIRGINIA REGIONAL

AIRPORT AUTHORITY

*v.*

ROBERT KITTLE, THE BOARD OF EDUCATION OF THE

COUNTY OF KANAWHA, HARRY A. WALLACE, III

MATTHEW KINSOLVING, PAUL LEARY,

ROSEANNA YOUNG *and* STUART CALWELL, JR.

(No. CC925)

Decided October 15, 1981.

*Lively, Light & Taylor and W. T. Lively, Jr.,* for plaintiffs Sticklen and Dyke.

*Jackson, Kelly, Holt & O'Farrell, Thomas E. Potter, John M. Slack, III and James R. Snyder,* for plaintiff Central W. Va. Regional Airport Authority, etc.

*Weaver, Hayes & Moredock and Thomas W. Hayes, Love, Wise, Robinson & Woodroe, John O. Kizer, Mario J. Palumbo* and *Kurt E. Entsminger,* for defendants.

McHUGH, JUSTICE:

This action is before this Court upon certified questions from the Circuit Court of Kanawha County, West Virginia, and the August 27, 1981, orders of that court dismissing the complaints and amended complaints of the plaintiffs. The certified questions were docketed by this Court by order entered September 2, 1981.[1] Accordingly, this Court

---

[1] See W. Va. Supreme Court R. App. P. 13 and *W. Va. Code,* 58-5-2 [1967]. *W. Va. Code,* 58-5-2 [1967], provides, in part, as follows:

Any question arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, in any case within the appellate jurisdiction of the supreme court of appeals, may, in the discretion of the circuit court in which it arises, and shall, on the joint application of the parties to the suit, in beneficial interest, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back.

has before it all matters of record and the briefs and argument of counsel.

The certified questions before this Court arise from the dismissal by the Circuit Court of Kanawha County, West Virginia, of the plaintiffs' complaints and the amended complaints in Civil Actions CA-81-1050 and CA-81-2693. In those actions, the plaintiffs sought to enjoin the defendants from constructing a consolidated high school upon a certain tract of land in the Charleston area known as the "Vaughan site."

The defendants in this action are the Board of Education of the County of Kanawha and its individual members. Robert Kittle, Superintendent of Kanawha County Schools, was also joined as a defendant.

## PROCEDURAL HISTORY

On March 13, 1981, a civil action, No. CA-81-1050, was filed in the circuit court against the defendants by John M. Sticklen and William Dyke. That action (hereinafter referred to as the "Sticklen action") was brought by Sticklen and Dyke individually and as representatives of a class of parents of children subject to attendance at the proposed consolidated high school. The Sticklen action sought to temporarily and permanently enjoin the defendants from constructing the consolidated high school at the Vaughan site.

The Central West Virginia Regional Airport Authority (hereinafter "Authority") filed a motion to intervene in the Sticklen action, No. CA-81-1050, which motion was granted by the circuit court. Moreover, the Authority filed a separate action, No. CA-81-2693, against the defendants. As did the individual plaintiffs in the Sticklen action, the Authority sought to temporarily and permanently enjoin

---

In Syl. pt. 1, *Neal v. Huntington Publishing Company*, 159 W. Va. 556, 223 S.E.2d 792 [1976], this Court held that "[a]n order sustaining a motion to dismiss which dismisses the complaint but does not dismiss the action is reviewable upon certificate authorized by *W. Va. Code*, 58-5-2, *as amended*."

the defendants from constructing the consolidated high school upon the Vaughan site. By order the circuit court consolidated the Sticklen action, No. CA-81-1050, and the action instituted by the Authority, No. CA-81-2693. By another order, however, the circuit court dismissed the Sticklen action insofar as it constituted a class action.

Pursuant to *W.Va.R.Civ.P.* 12(b)(6), the defendants moved to dismiss for failure to state a claim upon which relief could be granted. The circuit court granted the defendants' motions and dismissed the complaints in the two actions, Nos. CA-81-1050 and CA-81-2693. In dismissing the complaints against the defendants, the circuit court, upon its own motion, certified certain questions of law to this Court.

## FACTS

In September, 1979, a Citizens Advisory Committee recommended to the Board of Education of the County of Kanawha that two Charleston schools know as Charleston High School and Stonewall Jackson High School be consolidated into a new school and that Stonewall Jackson High School be renovated and used as a junior high school. Electing to proceed with consolidation, the Board created an Advisory Site Selection Committee. The Site Selection Committee considered eighteen various locations for the new consolidated school and ultimately concluded that the Vaughan site and the Newhouse Branch site were favorable.

The Site Selection Committee recommended the Newhouse Branch site to the Board. The committee suggested, however, that it would reconvene to discuss the Vaughan site if the Newhouse Branch recommendation resulted in difficulty.

Subsequently, the Board decided to construct the consolidated high school at the Vaughan site. Specifically, on May 22, 1980, the Board, after providing the public with an

opportunity for discussion, selected the Vaughan site for the new school.[2]

The Vaughan site is a tract of land located at Elk Two Mile Creek, Charleston North District, Kanawha County, West Virginia. It lies some 2,400 feet from the extended center line of the primary instrument runway and within 3,000 feet of the general aviation runway of the airport. Moreover, based upon the master plan for Kanawha Airport, the Vaughan site allegedly falls within certain "noise footprints" of aircraft operations. Furthermore, the plaintiffs contend that the site lies under generally accepted and normal aircraft flight patterns and directly under the flight path for incoming and departing helicopter traffic.

As a result of the proximity of the proposed school site to the airport and the alleged problems caused thereby, the Board of Members of the Airport Authority on June 2, 1980, adopted a resolution opposing the Vaughan site as

---

[2] The minutes of the May 22, 1980, meeting of the Board of Education of the County of Kanawha provide, in part, as follows:

Mr. F. Douglas Stump moved: That the Board consolidate and proceed with the consolidation of the high schools of Charleston/Stonewall; proceed with the planning and construction at the Vaughan site with the front side of that Vaughan property which is closest to Greenbrier Street; and that the cost of the property not exceed the present allocation in our budget. That the school and the road be let for bidding construction at the same time and that the school be open with no more than 1200 students and that 7300 square feet be cut from the non-academic area of that plan.

At this point, Mrs. Alice W. Moore, President, indicated that one hour had been previously allowed for discussion (6:30-7:30 p.m. in a Special Informal meeting with the citizens, administrative staff, and members of the Board of Education). She then asked for discussion from the floor, for which there was a total allotment of five minutes. The following persons from the floor voiced their opposition to the Vaughan property:

Mr. Jack Sticklen, Stonewall Jackson High School Parent
Mr. Douglas E. Hunt, President, Stonewall Jackson PAC
    (Mr. Hunt distributed materials citing figures comparing the cost of the Vaughan site with the Cabell site)
Mr. Jim Monroe, Charleston City Councilman
Mr. John Swartz, Air Traffic Controller, Federal Aviation Agency
Motion seconded by Mr. Harry A. Wallace III and carried 4:0, with Dr. Paul A. Leary abstaining.

the location for the school. In a newspaper article appearing in the *Charleston Daily Mail* on June 13, 1980, defendant Kittle, Superintendent of Kanawha County Schools, was quoted as stating that he would seek alterations in any aircraft or helicopter flight patterns over the proposed school at the Vaughan site.

On November 14, 1980, a meeting was held before the West Virginia Board of Education wherein a delegation including representatives of the Airport Authority appeared in opposition to the Vaughan site. Nevertheless, the West Virginia Board of Education approved the Vaughan site for the location of the new consolidated high school.

Work began at the Vaughan site prior to the commencement of proceedings before this Court.

The questions certified to this Court, and the rulings of the circuit court thereon, are set forth in certificates signed by the circuit judge on August 27, 1981. The questions certified with respect to the action of the Authority, No. CA-81-2693, are as follows:

> 1. Whether a [sic] avigation easement can be acquired over the land of an adjacent land owner [sic] by virtue of aircraft overflights that result from the use of the adjacent regional airport? If such an avigation easement can be acquired, is it acquired by the Regional Airport Authority or by the owners of the aircraft making such overflights?

> 2. In the absence of a statute regulating the same, does the establishment of an airport limit the right of an adjacent land owner [sic] to make any desired, proper, beneficial use of his land, not amounting to a nuisance, notwithstanding the fact that such use may interfere with the adjoining airport?

> 3. Does the construction of a high school upon land adjacent to an airport constitute a nuisance enjoinable by a court upon application of the Airport Authority?

4. Whether the possible loss of federal grants to the Regional Airport Authority because of the permitted incompatible use (construction of the new high school) of adjacent land is a sufficient basis to allow a court, upon application of the Regional Airport Authority, to enjoin such construction?

5. Whether the plan of private developers, if any, to develop the property surrounding the proposed site of the new high school, and also adjacent to the airport facility, that could precipitate civil and/or administrative action against the Regional Airport Authority, provide a sufficient basis to allow a court, upon application of the Regional Airport Authority, to enjoin the construction of the new school and thereby chill the development of surrounding property?

6. Whether the inaction or failure of the elected members of the county board of education to repudiate the actions of the Superintendent of Schools in constructing the new school at a location on the proposed site that differs from the location upon said site voted upon and adopted by a resolution of said Board constitutes an implied ratification of the change in location.

The rulings of the circuit court were adverse to the Authority with respect to all of the above certified questions. Essentially, the circuit court held that an avigation easement could not be acquired by prescription and that the construction of the new high school at the Vaughan site does not constitute an enjoinable nuisance. As indicated below, we affirm the rulings of the Circuit Court of Kanawha County with respect to all of the certified questions in the action filed by the Authority, with the exception of certified question three, the nuisance question. As to that question, we reverse the ruling of the circuit court.

The questions certified to this Court with respect to the Sticklen action, No. CA-81-1050, are as follows:

1. Whether a county board of education, by virtue of West Virginia Code § 18-5-9 and § 18-5-13, has

the exclusive authority to establish schools and to select and to acquire sites therefore, if there is no fraud, collusion, or palpable abuse of discretion, notwithstanding the allegations of the complaint and first amended and supplemental complaint?

2. Whether the rule that county boards of education are bound by the remedies and procedures they properly establish to conduct their affairs requires a county board of education to follow or to consider the recommendation of an advisory site selection committee appointed by said Board where the appointment of such committee is not mandated by any statute, rule, regulation, or adopted policy of said Board?

3. Whether the allegations of the complaint are sufficient to warrant the court to interfere with the exclusive authority of a county board of education to establish schools and to select and acquire sites therefor in the absence of specific averments of the circumstances constituting fraud, collusion, or palpable abuse of discretion?

4. Whether the inaction or failure of the elected members of the county board of education to repudiate the actions of the School Superintendent in constructing the new school at a location on the proposed site that differs from the location upon the precise site voted upon and adopted by a resolution of said Board constitute an implied ratification of the change in location?

As in the action filed by the Authority, the rulings of the circuit court were adverse to the plaintiffs in the Sticklen action with respect to all of the above certified questions. Essentially, the circuit court held that, in the absence of fraud, collusion or palpable abuse of discretion, a county board of education has exclusive authority to select and acquire school sites. Furthermore, the circuit court held that the plaintiffs did not sufficiently state a cause of action against the defendants. As indicated below, we reverse the rulings of the Circuit Court of Kanawha County with respect to certified questions one and three in

the Sticklen action, and we affirm the rulings of the circuit court with respect to certified questions two and four.

Several of the above certified questions are interrelated and will be consolidated for review in this opinion.

## ACTION OF THE AUTHORITY— CERTIFIED QUESTIONS ONE AND TWO

With respect to questions one and two certified to this Court in the action filed by the Airport Authority, the Circuit Court of Kanawha County held that an avigation easement in the airspace used by aircraft over land adjacent to an airport cannot be acquired by prescription. Furthermore, the circuit court held that an owner of property adjacent to an airport may make any desired, proper and beneficial use of his land not amounting to a nuisance, notwithstanding that such desired, proper and beneficial use may interfere with the adjoining airport. Specifically, the circuit court held that the right of the Authority to use the airspace over the Vaughan property was not superior to the right of the defendants to construct a high school upon that site.

An avigation easement is an easement of right to navigation in airspace over designated land. An avigation or flight easement is somewhat different from a clearance or obstruction easement. *United States v. Brondum*, 272 F.2d 642 (5th Cir. 1959); 4A *Words and Phrases*, "Avigation Easement" (1969).

In *United States v. Brondum, supra,* the United States sought the right to cut trees and natural growth to a prescribed height and to remove man-made obstructions above a prescribed height. The property in question was near an air force base. The court in *United States v. Brondum* held that the government was seeking a clearance or obstruction easement rather than an avigation or flight easement.[3]

---

[3] In *United States v. Brondum, supra,* the Court stated as follows:
An avigation easement may or may not contain provisions dealing with obstructions, but, unlike a clearance easement, in express terms it permits free flights over the land in question. It

It should be noted that no clearance or obstruction easement is involved in the proceedings before this Court. There are no allegations in the record to the effect that natural or man-made obstructions at the Vaughan site may interfere with the flight of aircraft to or from the Kanawha Airport. Rather, the Authority in its amended complaint asserts generally that it has a "prescriptive easement in the airspace" over the Vaughan site.[4]

Very few jurisdictions in the United States have considered the question of prescriptive avigation easements.[5] The Authority cites *Classen v. State, Department of Highways*, 621 P.2d 15 (Alas. 1980) and *Highline School District No. 401, King County v. Port of Seattle*, 87 Wash.2d 6, 548 P.2d 1085 (1976), in support of its assertion that a prescriptive easement in airspace can be obtained by continuous overflights.

In *Classen*, a landowner brought an inverse condemnation action asserting that the construction of a highway bridge by the State destroyed the landowner's ability to

provides not just for flights in the air as a public highway—in that sense no easement would be necessary; it provides for flights that may be so low and so frequent as to amount to a taking of the property. . . .

272 F.2d at 645.

[4] Paragraph seventeen of the amended complaint of the Authority states as follows:

The Airport Authority has, by its hostile, actual, open and exclusive use of the airspace overlying the Vaughan site, under claim of title, since 1946, obtained a prescriptive easement in the airspace overlying such site, by virtue of *W. Va. Code* Ann. § 55-2-1, which easement constitutes a property right capable of being protected by injunctive relief.

*W. Va. Code*, 55-2-1, [1923], provides that "[n]o person shall make an entry on, or bring an action to recover, any land, but within ten years next after the time at which the right to make such entry or to bring such action shall have first accrued to himself or to some person through whom he claims."

[5] The easement question before this Court is narrow in that the Authority asserts that it acquired an avigation easement by prescription. Therefore, this Court need not be concerned, for example, with avigation easements acquired by written contract. This Court need only decide whether an avigation easement may be acquired by prescription.

use his residence as the base for his floatplane air taxi service. The Court, in *Classen,* recognized that the landowner's property may have lost some of its value as a result of the construction of the bridge. However, the Court held that the landowner's claim was not compensable. In passing, the Court stated as follows:

> Classen's use of the river is analogous to an airport's need for a "clearance" or "obstruction" easement to ensure that takeoffs and landings can be made safely. As Classen does not claim to have been *granted* an easement, his only possible right to an easement would be by *prescriptive* use. However, an easement may not be acquired by prescription against the state. * * * Thus, like the superior court, we conclude that the state's actions did not deprive Classen of a compensable property right. We need not determine whether an airspace easement may be acquired by prescription against a party other than the state. 621 P.2d at 17-18.

In *Highline School District,* a school district brought an inverse condemnation action alleging damages caused by aircraft noise emanating from an airport. The Supreme Court of Washington held in *Highline School District* that the trespass and nuisance claims of the school district were properly dismissed. Futhermore, the Court recognized that ". . . acquisition by prescription is the result of the running of the statute of limitations." 548 P.2d at 1088. The Court stated that the statute of limitations applied to the action of the school district. However, the Court in *Highline School District* further held that a material fact existed as to whether the school district acquired a new cause of action for aircraft noise within the period not barred by the statute of limitations.

This Court is of the opinion that neither *Classen* nor *Highline School District* support the position of the Authority concerning avigation easements by prescription. Assuming that the court in *Classen* was dealing with a possible avigation easement rather than a clearance or obstruction easement, that court expressly concluded that it need not determine whether such an easement could be acquired from a party other than the state. As against the

state, the court in *Classen* held that no such easement could be acquired by prescription. Moreover, the issue in *Highline School District* was noise rather than the specific flight paths of aircraft, and furthermore, any prescriptive acquisition of the airport was subject to subsequent claims of the school district based upon new causes of action.

The *Highline School District* case was cited in *Peterson v. Port of Seattle*, 94 Wash.2d 479, 618 P.2d 67 (1980), where property owners in an inverse condemnation proceeding sought just compensation in regard to diminished value of property as a result of a municipal corporation's operation of an airport. The Court in *Petersen* held that the landowners had a right to compensation. The Court recognized the existence of prescriptive avigation easements but concluded, however, that no such easement had been shown under the facts in the case. Specifically, the Court found the airport's use of the airspace nonhostile, thus precluding a prescriptive easement. Furthermore, the Court in *Petersen* stated that even if a prescriptive avigation easement had existed at one time over the property in question, such an easement would not have been for the type and number of aircraft subsequently flying over the property.[6]

In *Drennen v. County of Ventura*, 112 Cal. Rptr. 907, 38 Cal.App.3d 84 (1974), the California Court of Appeal indicated that an avigation easement may be acquired by prescription.[7] However, under the facts in *Drennen*, no

___

[6] The Court in *Petersen* stated as follows:

Ever increasing usage of Sea-Tac airport by jet aircraft began in the 1960's and continues to this day. Year by year, from 1964 to 1974 when the instant action was filed, larger and noisier aircraft and more of them utilized the airport. The Port's own records demonstrates this. Thus, even if the trial court had found some kind of pre-1964 prescriptive easement, it would not have been for the type and number of aircraft which used the airport after that date and, consequently, it would not have decreased the Petersens' damage in 1974.

618 P.2d at 71.

[7] In *Drennen v. County of Ventura, supra,* the Court stated in footnote two, in part, as follows: "We see no reason why an avigation

prescriptive easement was acquired by the airport authority. Specifically, in *Drennen* the Court noted that the land in question had been unoccupied and unused. As the Court stated:

> Accordingly, under the foregoing circumstances, the overflight of aircraft during the claimed prescriptive period manifestly did not interfere substantially with plaintiff's actual use and enjoyment of their land since there was no such use and enjoyment. Therefore, the overflights did not invade plaintiffs' rights in their land. This being so, no prescriptive easement to overfly plaintiffs' land was acquired. 112 Cal. Rptr. at 910.

The *Drennen* case was cited and applied in *Smart v. City of Los Angeles*, 112 Cal. App.3d 232, 169 Cal. Rptr. 174 (1980), where the owner of a vacant tract of land brought an action for inverse condemnation and nuisance against the City of Los Angeles. The property owner asserted that his land was reduced in value as a result of aircraft overflights. Noting that the land had been vacant and that, therefore, the actual use by the owner of the property had not been inhibited by the aircraft, the court in *Smart* held that the owner's inverse condemnation action did not accrue until his attempted sale of the property. Consequently, the property owner's inverse condemnation action was not barred by the statute of limitations.

In *Shipp v. Louisville and Jefferson County Air Board*, 431 S.W.2d 867 (Ky. 1968) *cert. denied*, 393 U.S. 1088, 89 S.Ct. 880, 21 L.Ed.2d 782 (1969), a county airport authority alleged that it had a prescriptive right to the public, unobstructed use of airspace over the defendants' property for the purpose of the landing and taking off of aircraft. The circuit court required the defendant to allow the airport authority to enter upon the defendants' property to top obstructing trees. In *Shipp*, the Court of Appeals of Kentucky reversed and held that, inasmuch as the right of the landowners to maintain and enjoy their

---

easement may not be acquired by prescription in this state. * * * We do not decide the point however."

trees was acquired before the public right of transit through navigable airspace was fixed by law, the landowners' right to their trees was protected by constitutional law and could not be taken except by condemnation.

To summarize the above cases and other cases examined by this Court, it is evident that courts are reluctant to support the assertion of the Authority that a prescriptive easement in airspace can be obtained over property by continuous overflights. Various practical problems would make such a prescriptive easement difficult to define. As indicated in *Petersen, supra,* if such an easement were established, changes in the type and number of overflying aircraft could modify or cancel the easement. Moreover, other questions would arise such as whether more than one flight pattern over a particular tract of land would result in more than one prescriptive avigation easement, or by what manner could such an easement be established if more than one tract of land were involved.

Upon all the above, therefore, this Court is of the opinion that an avigation easement in the airspace used by aircraft over lands adjacent to an airport cannot be acquired by prescription.

## THE STICKLEN ACTION—
## CERTIFIED QUESTIONS ONE AND THREE

The August 27, 1981, orders of the Circuit Court of Kanawha County, West Virginia, dismissed the complaints in the Sticklen and Authority actions for failure to state a claim upon which relief could be granted. This dismissal was based upon motions of the defendants to dismiss made pursuant to *W.Va.R.Civ.P.* 12(b)(6).[8] This ruling of the

---

[8] Preliminary and permanent injunctive relief is sought by the plaintiffs in both the Sticklen action and the action filed by the Authority. The West Virginia Rules of Civil Procedure apply in cases where a permanent injunction is sought. As stated in Lugar and Silverstein, *West Virginia Rules of Civil Procedure* (Michie–1960) at 533: "If the plaintiff seeks ordinary forms of relief, including final injunction only, the Rules apply. . . ." Moreover, the note found in *W. Va. Code,* Vol. 1 to *W.Va.R.Civ.P.* 65 states as follows: "Practice respecting permanent injunctions is governed by these rules." With

circuit court raises issues concerning the sufficiency of the plaintiffs' complaints to state one or more causes of action.

Certified questions one and three in the Sticklen action relate to the authority of a county board of education in the selection of a school site and whether the plaintiffs' complaint is sufficient to state a cause of action concerning that authority. The Circuit Court of Kanawha County, West Virginia, held that in the absence of fraud, collusion or palpable abuse of discretion, exclusive authority to establish schools is vested by virtue of *W. Va. Code*, 18-5-9 [1933] and *W. Va. Code*, 18-5-13 [1981] in a county board of education.[9] The circuit court further held that the allegations of the complaint were insufficient to warrant interference with the county board's authority in the selection and acquisition of school sites.

These circuit court rulings were prompted by the defendants' Rule 12(b)(6) motion to dismiss.

The general rules of pleading and, specifically, the rules for stating claims for relief, are provided by *W.Va.R.Civ.P.* 8.[10]

---

respect to preliminary injunctions, *W.Va.R.Civ.P.* 65 provides as follows: "The practice respecting preliminary injunctions shall be in accordance with the practice heretofore followed in this State, including the use of a verified complaint or supporting affidavit."

[9] *W. Va. Code*, ch. 18, art. 5, relates to county boards of education. *W. Va. Code*, 18-5-9 [1933] provides, in part, as follows: "The board shall provide: (1) By purchase, lease, building or otherwise, a sufficient number of suitable schoolhouses and other buildings to meet the educational needs of its district. ..." *W. Va. Code*, 18-5-13 [1981] provides, in part, as follows: "The boards, subject to the provisions of this chapter and the rules and regulations of the state board, shall have authority: (4) To consolidate schools. ..."

[10] Rule 8 provides, in part, as follows:

(a) *Claims for relief*–A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

. . . .

In *Barker v. Traders Bank,* 152 W. Va. 774, 780, 166 S.E.2d 331, 335 (1969), this Court stated that "Rule 8(a), R.C.P., contemplates a succinct complaint containing a plain statement of the nature of the claim together with a demand for judgment."

Specifically, this Court has held that "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl., *Warner v. Kittle,* ____ W. Va. ____, 280 S.E.2d 276 (1981); Syl., *Oakvale Road Public Service District v. Smith,* ____ W. Va. ____, 276 S.E.2d 218 (1981); Syl., *Flowers v. City of Morgantown* ____ W. Va. ____, 272 S.E.2d 663 (1980); Syl. pt. 2, *Leasetronics v. Charleston Area Medical Center,* ____ W. Va. ____, 271 S.E.2d 608 (1980); Syl., *Dishman v. Jarrell,* ____ W. Va. ____, 271 S.E.2d 348 (1980); Syl. pt. 1, *Pauley v. Kelly,* 162 W. Va. 672, 255 S.E.2d 859 (1979); Syl. pt. 3, *Mandolidis v. Elkins Industries,* 161 W. Va. 695, 246 S.E.2d 907 (1978); Syl., *John W. Lodge Distributing Co. v. Texaco,* 161 W. Va. 603, 245 S.E.2d 157 (1978) and Syl. pt. 3, *Chapman v. Kane Transfer Company,* 160 W. Va. 530, 236 S.E.2d 207 (1977).

In *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), black employees of a railroad who were discharged or demoted brought an action in the United States District Court for the Southern District of Texas against their union alleging that the union failed to fairly represent them. The United States Supreme Court held that the complaint adequately set forth a claim upon which relief could be granted. In so holding, the Court states as follows:

> The respondents also argue that the complaint failed to set forth specific facts to support its

---

(e) *Pleading to be concise and direct; consistency*–(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

. . . .

(f) *Construction of pleadings*–All pleadings shall be so construed as to do substantial justice.

general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8 (f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. Maty v. Grasselli Chemical Co. 303 US 197, 82 Led 745, 58 S Ct 507. 2 L.Ed.2d at 85-86.

The *Conley* case has been cited by this Court in several cases involving issues of pleading. Such case include *Dishman v. Jarrell, supra, Mandolidis v. Elkins Industries, Inc., supra,* and *John W. Lodge Distributing Co. v. Texaco, supra.*

Other rules have evolved in this State resulting in a liberalization of pleading in civil cases. For example, for purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and its allegations are to be taken as true. *John W. Lodge Distributing Co. v. Texaco,* 161 W. Va. 603, 245 S.E.2d 157, 158 (1978).

Moreover, a motion to dismiss for failure to state a claim should be viewed with disfavor. *Mandolidis v. Elkins Industries*, 161 W. Va. 695, 246 S.E.2d 907, 920 (1978) and *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207, 212 (1977). As this Court stated in *Mandolidis*:

> In view of the liberal policy of the rules of pleading with regard to the construction of plaintiff's complaint, and in view of the policy of the rules favoring the determination of actions on the merits, the motion to dismiss for failure to state a claim should be viewed with disfavor and rarely granted. The standard which plaintiff must meet to overcome a Rule 12(b)(6) motion is a liberal standard, and few complaints fail to meet it. The plaintiff's burden in resisting a motion to dismiss is a relatively light one. *Williams v. Wheeling Steel Corp.*, 266 F.Supp. 651 (N.D. W. Va. 1967).[11] 246 S.E.2d at 920.

On the other hand, liberalization in the rules of pleading in civil cases does not justify a carelessly drafted or baseless pleading. As stated in Lugar and Silverstein, *West Virginia Rules of Civil Procedure* (1960) at 75: "Simplicity and informality of pleading do not permit carelessness and sloth: the plaintiff's attorney must know every essential element of his cause of action and must state it in the complaint."[12]

---

[11] This Court also stated in *Mandolidis, supra,* as follows:

All that the pleader is required to do is to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist. The trial court should not dismiss a complaint merely because it doubts that the plaintiff will prevail in the action, and whether the plaintiff can prevail is a matter properly determined on the basis of proof and not merely on the pleadings. Wright & Miller, *Federal Practice and Procedure*: Civil § 1216 (1969). 246 S.E.2d at 920.

[12] Wright & Miller, *Federal Practice and Procedure*: Civil § 1357 (1969), provides, in part, as follows:

Although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. Moreover, if the allegations in the complaint, taken as true, do

Two of the principal cases cited by the defendants are *Privett v. Board of Education,* 104 W. Va. 35, 138 S.E. 461 (1927) and *Pioneer Company v. Hutchinson,* 159 W. Va. 276, 220 S.E.2d 894 (1975). By way of these cases, the defendants assert that the Sticklen plaintiffs have not sufficiently stated a cause of action.

In *Privett,* the petitioner, alleging that he was a citizen, taxpayer and patron of the public schools, brought an action in mandamus to compel a county superintendent of schools to approve a proposed site selected by a board of education for a new school. The petitioner alleged that the proposed site was as convenient as any other site. The circuit court, upon the pleadings and the testimony introduced at a hearing, granted relief to the petitioner. This Court in *Privett* reversed the circuit court and held that the county superintendent, who preferred a different site for the school, properly acted within his discretion.[13] As this Court stated: "On the facts appearing in the record [the superintendent] might honestly have arrived at the decision he did." 138 S.E. at 462.

It is clear from a reading of the *Privett* opinion that both the circuit court and this Court had a record containing evidence upon which to determine the propriety of the superintendent's actions. There is no such record in the case before this Court inasmuch as the Circuit Court of Kanawha County dismissed the Sticklen complaint upon a Rule 12(b)(6) motion.

In *Pioneer Company,* the City Council of Charleston, West Virginia, awarded a sewer construction contract to the second lowest bidder rather than the alleged lowest bidder, the Pioneer Company. Subsequent to a hearing, the circuit court ordered the mayor to execute the contract with Pioneer. This Court, however, reversed and

---

not effectively state a claim, the added assertion by plaintiff that they do state a claim will not save the complaint.

[13] In *Privett, supra,* this Court stated as follows: "There is in this case no evidence tending to show that the county superintendent was acting in disregard of his duty, or that he was actuated by caprice, passion, partiality or prejudice." 138 S.E. at 462.

held *inter alia* that the city council was not guilty of a palpable abuse of discretion in awarding the construction contract to the second lowest bidder. In so holding, this Court noted the concern of the city council that the ownership of Pioneer and Pioneer's ability to efficiently perform the contract were questionable. As this Court stated:

> A court will not ordinarily interfere with the action of a public officer or tribunal clothed with discretion, in the absence of a clear showing of fraud, collusion or palpable abuse of discretion. *State ex rel. Printing-Litho, Inc. v. Wilson, supra.* Discretion in awarding a municipal contract is not abused when it is predicated upon "good faith and honesty". *Harrison v. City of Huntington,* 141 W. Va. 774, 93 S.E.2d 221 (1956).

> In the instant case, no accusation of fraud, collusion, lack of good faith or dishonesty is made. The trial court attempted in the short time before the bid period expired to determine whether Pioneer was a "responsible bidder". This was the function of the council, not the court. It was not within the authority of the court to substitute its judgment for that of the council. ...

> The trial court found the council 'guilty of a palpable abuse of discretion' essentially because the court reached a different conclusion than did the council. The court's test thus went to the result rather than the process. While the result may be evidence of a faulty process, a finding of abuse of the discretion vested by law in the council must be predicated upon more than a difference in judgment. 220 S.E.2d at 901, 902.

It should be noted that, with respect to the issue of palpable abuse of discretion, this Court did not hold in *Pioneer* that a motion to dismiss the complaint of Pioneer should have been granted. Rather, this Court's disposition of the issue related to the evidence taken before the trial court. Accordingly, this Court concluded, "While a better record might have been made by the council to illustrate more clearly the basis of its award to the second lowest

bidder, the record made upon review in the trial court is more than adequate to sustain the action taken." 220 S.E.2d at 902.

The *Pioneer* case was overruled upon grounds other than the palpable abuse of discretion issue in *State ex rel. E.D.S. Federal Corporation v. Ginsberg*, ____ W. Va. ____, 259 S.E.2d 618 (1979).

As in the *Privett* case, the *Pioneer* case involved a record containing evidence, and no such record exists in this case. Consequently, in reviewing the certified questions and rulings of the circuit court, this Court must look to the specific allegations of the Sticklen complaint.

The first amended and supplemental complaint in the Sticklen action incorporates the allegations of the original complaint and thus contains five counts. In three of these counts, Nos. I, II and IV, the plaintiffs allege that the defendants have acted in an arbitrary and capricious manner in selecting the Vaughan site for the proposed consolidated school. Count I essentially relates to the recommendation of the Newhouse Branch site rather than the Vaughan site by the advisory site selection committee, and the circuit court held this ground of relief to be without merit. (*See* certified question two—Sticklen action and circuit court ruling). As indicated below, we affirm that particular ruling of the circuit court.

However, with respect to Counts II and IV, this Court reverses the ruling of the circuit court that the first amended and supplemental complaint was insufficient to state a cause of action. The circuit court committed error in this respect in granting the Rule 12(b)(6) motion.

Although Counts II and IV in the Sticklen action do not allege that the defendants were guilty of "fraud, collusion or palpable abuse of discretion," this Court finds that, for purposes of a motion to dismiss, such an omission is not fatal. In their complaint, the Sticklen plaintiffs allege in both counts various factual matters in support of their assertion that the defendants acted in an arbitrary and capricious manner.

For example, paragraph 9a, Count II, of the complaint states, in part, as follows:

> The construction of the high school on the Vaughan site will violate recognized and established safety, environmental and planning standards for development, said school being in close proximity to a major airport facility, as further evidenced by the following:

> (1) The site lies some 2,400 feet from the extended center line of the primary instrument runway and within 3,000 feet of the General Aviation runway of Kanawha Airport.

Moreover, paragraph 18a, Count IV, states as follows: "The site selected would necessitate undue transportation of students by school bus in that the cost of transportation by school bus will increase materially in view of present day and future fuel costs."

Based upon the above allegations and others, this Court is of the opinion that Counts II and IV of the Sticklen plaintiffs' first amended and supplemental complaint were sufficient to withstand the defendants' Rule 12(b)(6) motion, and the rulings of the Circuit Court of Kanawha County with respect to certified questions one and three in the Sticklen action are hereby reversed.

### ACTION OF THE AUTHORITY— CERTIFIED QUESTION THREE

With respect to certified question three in the action filed by the Authority, the Circuit Court of Kanawha County, West Virginia, held that the construction of a high school adjacent to the Kanawha County Airport does not constitute an enjoinable nuisance. We reverse this ruling and hold that whether the construction of the proposed consolidated high school upon the Vaughan site constitutes a nuisance to the airport is a question of fact to be determined at the circuit court level.

In *Hillside Property Owners Association, Inc. v. Salanter Akiba Riverdale Academy*, 40 A.D.2d 964, 338 N.Y.S.2d 482 (1972) the plaintiffs, a group of home owners, brought

an action *inter alia* for declaratory judgment and injunctive relief against the projected construction of a grammar school. The grammar school was to be a "quasi-public building" for about six hundred pupils. Among the grounds asserted by the plaintiffs for relief were nuisance and restrictive covenants. The plaintiffs' complaints were dismissed. However, on appeal the Court in *Hillside Property Owners Association, Inc.* reinstated the plaintiffs' complaints and held that, with respect to the issue of nuisance, there was a question of fact.

In *Mahoney v. Walter*, 157 W. Va. 882, 205 S.E.2d 692 (1974), residents and property owners in Mar-Win Place, West Virginia, brought an action alleging that an automobile salvage yard operated by the defendants constituted a nuisance. The Mar-Win community existed for a long time prior to the establishment in 1969 of the salvage yard. Based upon the evidence adduced at trial, the lower court concluded that the salvage yard was a nuisance and should be enjoined. Upon appeal, this Court affirmed noting that ". . . whether there exists a nuisance per accidens, or a nuisance in fact, is, by its very definition, dependent upon the proof adduced before the trial chancellor." 205 S.E.2d at 697. Specifically, this Court recognized in *Mahoney* that the type of locality has an important bearing upon a reasonable use of a business property. As this Court stated:

> The trial court in this proceeding was presented two basic considerations: (1) Did a nuisance exist; and (2) was it of such a nature as to require its complete abatement by a total permanent injunction. In arriving at its first conclusion, the court could properly consider the nature of the businesses; the type of locality in which the business is located; and the type of activities complained of. 205 S.E.2d at 699.

This Court concluded in *Mahoney* that "[b]usinesses and occupations which, if performed or conducted elsewhere would not be nuisances, may be declared a nuisance if

performed or conducted in residential areas." 205 S.E.2d at 698.[14]

Clearly, the construction of the new school upon the Vaughan site in the case before this Court is very different from the salvage yard alleged to be a nuisance in *Mahoney*. However, as *Mahoney* indicates, as a general rule, a fair test as to whether a particular use of real property constitutes a nuisance is the reasonableness or unreasonableness of the use of the property in relation to the particular locality involved and ordinarily such a test to determine the existence of a nuisance raises a question of fact. Therefore, the circuit court committed error in granting the Rule 12(b)(6) motion with regard to the nuisance issue.

### THE REMAINING CERTIFIED QUESTIONS

With respect to the remaining questions certified by the Circuit Court of Kanawha County to this Court, we are of the opinion that as to question two in the Sticklen action, the circuit court was correct in holding that the recommendation of the Advisory Site Selection Committee was neither binding upon the county board nor entitled to particular consideration. The ruling of the circuit court is, therefore, affirmed. This Court likewise affirms the rulings of the circuit court with respect to certified question

---

[14] In *Mahoney, supra*, this Court noted that the term *nuisance* is difficult to define and depends upon the facts and circumstances of each case. In *Mahoney* this Court was able to define *nuisance* to some extent by quoting *Martin v. Williams*, 141 W. Va. 595, 610, 93 S.E.2d 835, 844 (1956) as follows:

"* * * A nuisance is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use of physical occupation uncomfortable. * * * A nuisance is anything which interferes with the rights of a citizen, either in person, property, the enjoyment of his property, or his comfort. * * * A condition is a nuisance when it clearly appears that enjoyment of property is materially lessened, and physical comfort of persons in their homes is materially interfered with thereby. * * * When the prosecution of a business, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well-being, comfort, repose, and enjoyment of the ordinary normal individual residing therein, the carrying on of such business in such locality becomes a nuisance, and may be enjoined. * * *" 205 S.E.2d at 697.

four in the Sticklen action and certified question six in the action filed by the Authority. The rulings of the circuit court in this regard were to the effect that the county board of education ratified by implication a change within the Vaughan tract of the location of the proposed school.

Finally, this Court affirms the rulings of the circuit court with respect to certified questions four and five in the action filed by the Authority. Certified question four involves the assertion by the Authority that the construction of the proposed school at the Vaughan site is incompatible with the Kanawha County Airport and will result in a loss of federal grants to the Authority. This Court agrees with the circuit court that the possible loss of such federal grants is not in this case a sufficient basis to enjoin construction of the new school. With respect to certified question five in the action filed by the Authority, this Court concludes, as did the circuit court, that possible future litigation brought against the Authority by private developers, if any, of property near the Vaughan site is not a sufficient basis in this case to enjoin the construction of the proposed consolidated high school.

The rulings of the Circuit Court of Kanawha County, West Virginia, upon the questions certified to this Court in the Sticklen and Authority actions are hereby affirmed, with the exception that the rulings of the circuit court with respect to certified question three in the action filed by the Authority and certified questions one and three in the Sticklen action are hereby reversed, and this consolidated action is remanded to the Circuit Court of Kanawha County for proceedings consistent with this opinion.

*Affirmed in part;
reversed in part and
remanded.*