# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 18-0984

_____

FILED
**November 20, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MOUNTAINEER FIRE & RESCUE EQUIPMENT, LLC,
BRIAN CAVENDER, and WALTER CAVENDER,**
Petitioners

v.

**CITY NATIONAL BANK OF WEST VIRGINIA, and
JOE BEAM,**
Respondents

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Charles E. King, Judge
Civil Action No. 18-C-17

**REVERSED AND REMANDED**

_____

Submitted: September 15, 2020
Filed: November 20, 2020

Michael D. Weikle, Esq.[1]
Tiffin, Ohio
Counsel for Petitioners

Ancil G. Ramey, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia
Counsel for Respondent City National
Bank of West Virginia

Miles B. Berger, Esq.
Romano & Associates, PLLC
Charleston, West Virginia
Counsel for Respondent Joe Beam

---

[1] At the time this opinion was filed, the records of this Court showed that petitioners' counsel, Michael D. Weikle, was not licensed to practice law in West Virginia.

**JUSTICE HUTCHISON delivered the Opinion of the Court.**

**CHIEF JUSTICE ARMSTEAD concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.**

**JUSTICE JENKINS concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.      "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)."  Syllabus Point 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

3.      "An interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review."  Syllabus Point 4, *Keesecker v. Bird*, 200 W. Va. 667, 490 S.E.2d 754 (1997).

4.      "Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith."  Syllabus Point 4, in part, *U. S. Fid. & Guar. Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965) (overruled on other grounds by *Sprouse v. Clay Commc'n, Inc*., 158 W. Va. 427, 211 S.E.2d 674 (1975)).

5.     "A circuit court ruling on a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure may properly consider exhibits attached to the complaint without converting the motion to a Rule 56 motion for summary judgment." Syllabus Point 1, *Forshey v. Jackson*, 222 W. Va. 743, 671 S.E.2d 748 (2008).

6.     When a movant makes a motion to dismiss a pleading pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, and attaches to the motion a document that is outside of the pleading, a court may consider the document only if (1) the pleading implicitly or explicitly refers to the document; (2) the document is integral to the pleading's allegations; and (3) no party questions the authenticity of the document. If a document does not meet these requirements, the circuit court must either expressly disregard the document or treat the motion as one for summary judgment as required by Rule 12(b)(7).

7.     A circuit court's decision whether or not to review a document outside of the pleadings, which is attached to a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, will be reviewed for an abuse of discretion.

**HUTCHISON, Justice**:

In this appeal from the Circuit Court of Kanawha County, we examine orders dismissing various counterclaims and crossclaims from this action. The parties' arguments about the dismissal orders seemingly implicate the complicated interplay between the duties of banks toward their customers, the Uniform Commercial Code, and the statutory fiduciary duties of the members of limited liability companies.

At its heart, however, this appeal focuses on a narrow issue: the interpretation and application of Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. That rule, although brief in length, can be devastating in application because it permits a trial court to dismiss a pleading that, beyond doubt, has "fail[ed] to state a claim upon which relief can be granted." The petitioners in this appeal argue that the circuit court improperly granted motions, pursuant to Rule 12(b)(6), to dismiss all claims they asserted against both of the respondents. In part, the petitioners assert that the circuit court improperly considered exhibits outside the pleadings that one respondent attached to its motion to dismiss.

As we set forth below, we find that the petitioners sufficiently asserted claims against both respondents, and that the respondents failed to show otherwise beyond doubt. We further find that a circuit court may consider only those exhibits that are intrinsic to the drafting of the pleading under challenge.

1

## I. Factual and Procedural Background

When we examine a circuit court's order dismissing a pleading under Rule 12(b)(6), we are required to accept the pleading's allegations as true. As we have often said, "Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock v. Moyle*, 222 W. Va. 547, 550, 668 S.E.2d 176, 179 (2008) (citing *John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158 (1978)). Hence, we begin with a recitation of the crossclaims and counterclaims asserted by the petitioners against the respondents in their pleading.

Petitioners Walter Cavender and Brian Cavender are experienced firefighters and EMTs. Working together for 15 years, the Cavenders sold fire safety and rescue equipment.

In 2011, the Cavenders met with respondent Joe Beam, who presented himself as a successful businessman with an excellent credit record and a long-established banking relationship with the other respondent, City National Bank of West Virginia, Inc. ("City National"). The Cavenders reached an agreement with Mr. Beam to create a new limited liability company, petitioner Mountaineer Fire & Safety Equipment, LLC ("Mountaineer Fire"). The three men agreed that the Cavenders would continue to sell equipment to their many existing customers, while Mr. Beam would provide the Cavenders with office space and an office manager to handle mail, accounting, and other paperwork.

The parties agreed that the Cavenders would be the majority owners and own 60% of Mountaineer Fire, while Mr. Beam would own 40%.

On March 11, 2011, Brian Cavender filed Articles of Organization for Mountaineer Fire with the West Virginia Secretary of State's office identifying Brian Cavender, Walter Cavender, and Mr. Beam as the only members.

Seven days later, on March 18, 2011, Brian Cavender and Mr. Beam visited City National to open a company checking account on behalf of Mountaineer Fire. City National provided them with a form resolution titled "Limited Liability Company Banking Resolution" (the "2011 Resolution"), and Brian Cavender and Mr. Beam completed and signed the form. The resolution designated Brian Cavender and Mr. Beam as the agents having authority to sign City National documents for Mountaineer Fire. The 2011 Resolution further authorized Brian Cavender and Mr. Beam to "enter into any such agreements" with City National regarding "funds, checks or items" of Mountaineer Fire. The 2011 Resolution also specified that it would remain in effect until City National received a "written notice of any amendment or revocation thereof[.]" Despite quoting language from the 2011 resolution, the petitioners did not attach a copy of the document to their pleading.

After receiving the signed 2011 Resolution, City National opened a checking account in the name of Mountaineer Fire (the "2011 account").

Over two years later, around June 27, 2013, Mr. Beam visited City National. The petitioners allege that, without notice to or authorization by Brian or Walter Cavender, and without a properly adopted corporate resolution, Mr. Beam directed City National to open a new checking account in the name of Mountaineer Fire (the "2013 account").

The petitioners assert in their pleading that City National provided Mr. Beam with a form "Limited Liability Company Authorization Resolution" to complete (the "2013 Resolution"). However, it seems Mr. Beam failed to properly complete the form 2013 Resolution. Quoting from the resolution, the petitioners point out that the form resolution required signatures from at least two members of Mountaineer Fire (the "Secretary" and "One Other Officer"); the form was signed by Mr. Beam alone. Second, quoting from the 2013 Resolution, the petitioners noted that the form provided: "This resolution supersedes resolution dated _____. If not completed, all resolutions remain in effect." Because Mr. Beam did not complete this portion, the petitioners contend that the 2011 Resolution continued to govern Mountaineer Fire's relationship with City National and, more importantly, that Brian Cavender retained the authority to act on behalf of Mountaineer Fire with City National. While the petitioners quoted language from the 2013 resolution, they did not attach a copy of the document to their pleading.

Despite Mr. Beam not having true authority from Mountaineer Fire to open an account, and despite not providing a properly adopted corporate resolution establishing his agency, the petitioners allege that City National improperly opened the new 2013

4

account. City National designated Mr. Beam as the only person with authority to make deposits to, and withdrawals from, the 2013 account.

In the Spring of 2017, Brian Cavender completed the sale of a fire truck on behalf of Mountaineer Fire. The sale terms reached by Brian Cavender required Mountaineer Fire to pay a $10,000 sales commission to a third party and permitted Mountaineer Fire to earn a $50,000 fee. Thereafter, Brian Cavender asked Mr. Beam several times if payment for the fire truck had been received; Mr. Beam repeatedly said it had not. On May 31, 2017, Brian Cavender went to Mountaineer Fire's office after hours to search the files kept by Mr. Beam and his office manager. The files revealed that Mountaineer Fire *had in fact* received full payment from the customer for the fire truck. Further, the files showed that Mr. Beam had paid himself $55,000 and had simultaneously failed to pay the third-party his commission (thereby breaching Mountaineer Fire's agreement with the third party, and adversely affecting the company's relationship with the third party).

The petitioners assert that Brian Cavender's search of the files also revealed that Mr. Beam had "made undisclosed and unapproved distributions" to himself and to other businesses he owned for services supposedly provided to Mountaineer Fire. West Virginia law provides that "[a] member [of a limited liability company] is not entitled to remuneration for services performed for a limited liability company[.]" W. Va. Code § 31B-4-403(d) (1996). Mr. Beam apparently never discussed with Brian or Walter

5

Cavender paying himself or his other business interests from Mountaineer Fire's income, and never received proper authorization to do so.

Following discussions with Brian Cavender, Mr. Beam agreed that he would withdraw as a member from Mountaineer Fire. However, Mr. Beam allegedly refused to provide a complete accounting of Mountaineer Fire's income and expenses. Moreover, Mr. Beam asserted that he was entitled to thousands of dollars in compensation from Mountaineer Fire for services he had provided. Further, the petitioners believed that at some point Mr. Beam initiated a collection action against a customer of Mountaineer Fire, a volunteer fire department. The collection action was not successful, and the customer is demanding Mountaineer Fire pay its legal expenses. The customer now refuses to work with the petitioners, and other customers in the area will not accept the petitioners' sales calls.

On June 8, 2017, Brian Cavender filed a report with the West Virginia Secretary of State's office listing Brian Cavender and Walter Cavender as the only members of Mountaineer Fire. Thereafter, the Cavenders opened a new checking account with a different bank on behalf of Mountaineer Fire.

The petitioners claim that Brian Cavender then approached City National and asked it to close Mountaineer Fire's accounts.[2] Brian Cavender presented City National

___

[2] The pleading is unclear when the petitioners learned of the existence of the 2013 account. The petitioners seem to suggest they did not learn of the 2013 account until
Continued . . .

6

with the documents filed with the Secretary of State showing Mr. Cavender was a member of the company, and, conversely, showing that Mr. Beam was not. The petitioners allege that City National refused to close the 2013 account and "falsely or recklessly" informed Brian Cavender that he did not have authority over Mountaineer Fire's account. Nevertheless, City National subsequently agreed to change the mailing address on the 2013 account from Mr. Beam's offices to the Cavenders' offices.

In early December 2017, Mountaineer Fire received in the mail a printed account statement for the 2013 account from City National that showed a balance of $5,130. The statement allegedly also showed that, after May 31, 2017, and after Mr. Beam agreed to leave the company, Mr. Beam had collected outstanding balances owed to Mountaineer Fire by certain customers, had deposited those amounts into the 2013 account with City National, and had then paid himself.

Thereafter, the petitioners say they again contacted City National and again demanded that City National close the 2013 account. The petitioners note that the 2011 Resolution remained in effect and that Brian Cavender had full agency over Mountaineer Fire's accounts. However, City National again refused to close the account or to pay the balance of the account to the petitioners.

---

after parting ways with Mr. Beam in June 2017. City National claims the petitioners had to have known of the account's existence shortly after it was created in 2013.

7

The petitioners later learned that, on December 20, 2017, Mr. Beam filed a report with the Secretary of State that added his name as a member of Mountaineer Fire. Mr. Beam falsely certified that he was a member of Mountaineer Fire "holding a power-of-attorney and . . . duly authorized to file this report on behalf of this limited liability company[.]"

This case was initiated in the circuit court by respondent City National on January 5, 2018. City National filed a "complaint for interpleader" against petitioners Mountaineer Fire, Brian Cavender and Walter Cavender, and against respondent Mr. Beam. City National asserted that it had learned of a dispute between the Cavenders and Mr. Beam over Mountaineer Fire's funds in City National accounts and, because of the dispute, could not "determine which of the various parties to this action may have some valid claim to the disputed funds[.]" City National asked the circuit court for an order permitting it to pay the disputed funds into the circuit court so that any party who was lawfully entitled could resolve their claim to those funds. *See generally* W.Va. R. Civ. P. 22 (establishing claims for interpleader).

This appeal arises out of the thirty-page responsive pleading filed by petitioners Mountaineer Fire, Brian Cavender, and Walter Cavender. The petitioners answered City National's complaint for interpleader, asserting at various points that City National had been "grossly negligent" and was "not an innocent stakeholder and bears substantial responsibility for the unlawful conversion of Mountaineer Fire's funds by Joe Beam." The petitioners claimed that City National opened the 2013 account despite

8

knowing that Mr. Beam did not have proper authorization from Mountaineer Fire to do so, and that City National knew or should have known Mr. Beam was violating his fiduciary duties to the company.

The petitioners' pleading went on to assert (1) crossclaims against Mr. Beam and (2) counterclaims against City National.

Against Mr. Beam, the petitioners asserted five crossclaims. First, the petitioners generally contended that, as a member of Mountaineer Fire, Mr. Beam breached his fiduciary duties of loyalty and care to the company and his fellow members. However, in an error that later became a point of contention, the petitioners went on to specifically allege that Mr. Beam violated the duties of loyalty and care "set forth under West Virginia Code 31B-4-409(a)(1) and (2)(a)(b) and (c)[.]" As Mr. Beam would later argue, West Virginia Code § 31B-4-409(a) (1996) is composed of a single sentence, and it has no subsections (1) or (2). Second, the petitioners generally contended that Mr. Beam unlawfully converted funds belonging to Mountaineer Fire on deposit with City National. However, again, the petitioners specifically contended that the conversion violated the "duties set forth under West Virginia Code 31B-4-409(a)(1) and (2)(a)(b) and (c)[.]" Third, the petitioners claimed that Mr. Beam had converted property belonging to Mountaineer Fire to his personal use; fourth, that Mr. Beam had tortiously interfered with Mountaineer Fire's business operations; and fifth, had committed fraud.

9

Against City National, the petitioners asserted three counterclaims. In the first counterclaim, the petitioners alleged that City National had engaged in breach of contract and breach of the covenant of good faith and fair dealing. In the second counterclaim, the petitioners claimed that City National had aided and abetted the breach of a fiduciary duty by Mr. Beam. The petitioners restated their claim that Mr. Beam had breached his fiduciary duties to Mountaineer Fire, and then alleged that City National either knew Mr. Beam was breaching those duties or was negligent in not knowing. According to the petitioners, City National's actions "constitute substantial and knowing assistance" to Mr. Beam in breaching his fiduciary obligations and, therefore, City National should be jointly liable for the damages caused by that breach. In the third and final counterclaim, the petitioners alleged that City National had aided and abetted Mr. Beam in committing tortious interference with Mountaineer Fire's business operations.

Mr. Beam and City National moved to dismiss the petitioners' cross- and counterclaims. Citing to Rule 12(b)(6), Mr. Beam and City National claimed that the petitioners' pleading failed to state a claim upon which relief could be granted. City National attached copies of the 2011 and 2013 Resolutions, copies of the account opening documents, and several canceled checks and checking account statements to its motion as support for its arguments.

In two orders, both dated September 26, 2018, the circuit court dismissed all of the petitioners' cross- and counterclaims. In the first order regarding the five crossclaims against Mr. Beam, the circuit court focused on the fiduciary duty statute cited by the

petitioners. The circuit court found that "[s]ince West Virginia Code 31B-4-409(a)(1) and (2)(a)(b) and (c) do not exist, and thus are not valid law under which relief could be granted or under which duties could be assigned," the petitioners failed to properly state a claim that Mr. Beam had engaged in a breach of fiduciary duty toward the petitioners, and failed to properly state a claim that Mr. Beam had unlawfully converted the company's funds on deposit with City National. Additionally, the circuit court found that the petitioners had failed to "specifically allege, with any particularity whatsoever, any specific acts of 'conversion'" of Mountaineer Fire property by Mr. Beam, had failed to "show a *prima facie* case of tortious interference," and had failed to properly state a claim for fraud. The circuit court therefore dismissed all of the petitioners' claims against Mr. Beam.

In the second order, the circuit court dismissed the three counterclaims asserted by the petitioners against City National, granted City National's request for interpleader, and permitted City National to pay the proceeds of Mountaineer Fire's bank accounts into the court. First, the circuit court found that the petitioners failed to state a claim for breach of contract because they had failed to "identify a single term of the contract allegedly breached" by City National. Further, based upon City National's interpretation of the account documents attached to the motion to dismiss, the circuit court found that City National had "breached no term of any contract relative to" the petitioners. The circuit court also found that there can be no claim for breaching the implied covenant of good faith and fair dealing independent from a breach of the written contract.

11

As to the petitioners' second counterclaim, that City National had aided and abetted Mr. Beam's breach of his fiduciary duties, the circuit court concluded that a bank has no duty to monitor depository accounts – and, therefore, the petitioners could not prevail on their claim. Similarly, on the petitioners' final counterclaim that City National had aided and abetted Mr. Beam's tortious interference, the circuit court found that the petitioners "identify no contractual or business relationships alleged to have been interfered with by Defendant Beam[.]" Further, the circuit court noted that all of the parties were in contractual relationships with one another, and "one cannot tortiously interfere with one's own relationship." Accordingly, the circuit court concluded that the petitioners had failed to state a claim against City National upon which relief could be granted and dismissed all three claims.

The petitioners now appeal the circuit court's September 26, 2018, orders dismissing the petitioners' pleading, pursuant to Rule 12(b)(6), for failing to state a claim upon which relief can be granted.

## II. Standard of Review

A circuit court's decision that a complaint fails to state a claim on which relief can be granted is a ruling of law, and we review such a decision de novo. *See* Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.").

The parties' arguments in this appeal challenge the circuit court's interpretation and application of Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. As we have often stated, "An interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review." Syl. pt. 4, *Keesecker v. Bird*, 200 W. Va. 667, 490 S.E.2d 754 (1997).

## III. Discussion

The petitioners contend that the circuit court erred in granting respondents' motions to dismiss pursuant to Rule 12(b)(6). They argue that the circuit court failed to consider all the petitioners' factual allegations, and for the few allegations it did consider, that the circuit court improperly imputed inferences favorable to the respondents.

Additionally, the petitioners challenge City National's decision to attach documents to its Rule 12(b)(6) motion to dismiss. The petitioners argue that City National's decision to attach those documents should have compelled the circuit court to either ignore those documents, or to have treated the motion as one for summary judgment (as required by Rule 12(b)(7) of the Rules of Civil Procedure).

We begin by outlining, in detail, the parameters of Rule 12(b)(6).

## A. Rule 12(b)(6)

Rule 12(b)(6) of the West Virginia Rules of Civil Procedure permits a party responding to a pleading[3] asserting an entitlement to relief to file a motion asking the circuit court to dismiss all or part of the pleading for "failure to state a claim upon which relief can be granted." A motion under Rule 12(b)(6) tests the adequacy of the claims and the notice provided by the allegations in the pleading. *Newton v. Morgantown Mach. & Hydraulics of W. Virginia, Inc*., 242 W. Va. 650, 653, 838 S.E.2d 734, 737 (2019) ("[T]he purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the sufficiency of the complaint."). When a Rule 12(b)(6) motion is made, the pleading party has no burden of proof. Rather, the burden is upon the moving party to prove that no legally cognizable claim for relief exists. *See* 5B Charles A. Wright, Arthur R. Miller, Federal Practice and Procedure § 1357 (3rd ed. 2020) ("All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists.").

---

[3] Rule 7(a) of the Rules of Civil Procedure defines "pleading" as

> a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

Rule 8(f) of the West Virginia Rules of Civil Procedure dictates that courts liberally construe pleadings so "as to do substantial justice." *Accord*, *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) ("A trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do substantial justice."). Hence, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977). A court reviewing the sufficiency of a complaint should view the motion to dismiss with disfavor, should presume all of the plaintiff's factual allegations are true, and should construe those facts, and inferences arising from those facts, in the light most favorable to the plaintiff. *Chapman*, 160 W. Va. at 538, 236 S.E.2d at 212. The task of a court in ruling on a Rule 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) (citation omitted).

Rule 12(b)(6) is not to be read or applied in a vacuum; it is intermeshed with numerous other rules. For instance, Rule 8(a)(1) requires that a pleading set forth nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The Rules of Civil Procedure eschew "technical forms of pleading" and require only that "[e]ach averment of a pleading shall be simple, concise, and direct." Rule 8(e)(1). A party may plead "two or more statements of a claim . . . alternatively or hypothetically[.]"

15

Rule 8(e)(2). Claims for relief may be stated on behalf of multiple plaintiffs "jointly, severally, or in the alternative" against multiple defendants, and the parties "need not be interested in obtaining or defending against all of the relief demanded." Rule 20(a). Rule 15(a) permits liberal amendments to a party's pleadings, while Rule 15(b) makes clear that pleadings may be amended not only as late as trial, but "even after judgment" "to cause them to conform to the evidence[.]" Rule 15(b) further permits parties to examine at trial "issues not raised by the pleadings" and treat those issues "in all respects as if they had been raised in the pleadings," if the parties give express or implied consent. Overall, the Rules require that the "final judgment" in every case (except one by default) "shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleadings*." Rule 54(c) (emphasis added).

Taken as a whole, the West Virginia Rules of Civil Procedure establish the principle that a plaintiff pleading a claim for relief need only give general notice as to the nature of his or her claim.[4] Stated simply, when Rule 12(b)(6) is viewed in the context of these other intermeshing rules,

---

[4] This Court acknowledges that federal courts have grafted an additional standard onto the analysis of federal Rule 12(b)(6) motions: to survive a motion to dismiss, the pleading's factual allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The cases giving rise to this standard are "known slangily as Twiqbal," Natalma McKnew, *I Just Love a Good Debate! Twombly and Iqbal Five Years Later*, 33 Franchise L.J. 33, 41 (2013), and have engendered a "blizzard" of criticism and a slew of

Continued . . .

> [t]he intent and effect of the rules is to permit the claim to be stated in general terms; the rules are designed to discourage battles over mere form of statement and to sweep away the needless controversies which the [common law] codes permitted that served either to delay trial on the merits or prevent a party from having a trial because of mistakes in statement.

Advisory Committee Report, October, 1955, Note to Rule 8(a)(2), 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1201 (3rd Ed. 2020).  As we once said, "The primary purpose of this Court in adopting and promulgating the Rules of Civil Procedure for trial courts was to eliminate the intricacies and interminable delays inherent

---

cases that are "wildly inconsistent." *See generally*, *McCauley v. City of Chicago*, 671 F.3d 611, 622 (7th Cir. 2011) (Hamilton, Judge, dissenting, in part).

However, West Virginia Rules of Civil Procedure 8 and 12, along with our interpretation of those rules, are more generous and weighted toward resolving cases on their merits than what is allowed by federal courts under the federal rules.  While this Court gives clout to federal cases in determining the meaning and scope of our rules, we have just as often said this does not mean that our "legal analysis in this area should amount to . . . Pavlovian responses to federal decisional law." *Stone v. St. Joseph's Hosp. of Parkersburg,* 208 W. Va. 91, 112, 538 S.E.2d 389, 410 (2000) (McGraw, J., concurring, in part, and dissenting, in part) (holding that West Virginia disability discrimination law "is not mechanically tied to federal disability discrimination jurisprudence.").  Rather, "[a] federal case interpreting a federal counterpart to a West Virginia rule of procedure may be persuasive, but it is not binding or controlling." Syl. pt. 3, *Brooks v. Isinghood*, 213 W. Va. 675, 678, 584 S.E.2d 531, 534 (2003).

Under West Virginia law, when measuring the sufficiency of a complaint, "all that is required by a plaintiff is 'fair notice.'" *Roth v. DeFeliceCare, Inc.*, 226 W. Va. 214, 220 n.4, 700 S.E.2d 183, 189 n.4 (2010) (quoting *Scott Runyan Pontiac–Buick, Inc.,* 194 W. Va. at 776, 461 S.E.2d at 522).  We continue to firmly abide by this standard. *See, e.g.*, *Goldstein v. Peacemaker Properties, LLC*, 241 W. Va. 720, 730, 828 S.E.2d 276, 286 (2019) ("West Virginia remains a notice-pleading state.").

17

in the rules of common law pleading." *Barker v. Traders Bank*, 152 W. Va. 774, 780, 166 S.E.2d 331, 335 (1969).

In light of the purpose behind the Rules of Civil Procedure, this Court has steadfastly held that, to survive a motion under Rule 12(b)(6), a pleading need only outline the alleged occurrence which (if later proven to be a recognized legal or equitable claim), would justify some form of relief.[5] "The complaint must set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist." *Fass v. Nowsco Well Serv., Ltd.*, 177 W. Va. 50, 52, 350 S.E.2d 562, 563 (1986). "[A] complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is." *Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. at 776, 461 S.E.2d at 522.

"[A] trial court should not dismiss a complaint where sufficient facts have been alleged that, if proven, would entitle the plaintiff to relief." *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. at 470, 655 S.E.2d at 492. Hence, dismissal under Rule 12(b)(6) is not warranted merely because the pleading fails to state all of the elements of the particular legal theory advanced; instead, the circuit court should examine the allegations as a whole to determine whether they call for relief on any possible theory. Moreover, a party is not required to establish a *prima facie* case at the pleading stage. "Before discovery has

[5] Stated in the vernacular, a complaint need only provide the who, what, where, and when of a problem, so that the responding party can formulate a response and the court can begin to decide how to remedy that problem.

18

unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard[.]" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Accordingly, our pleading rules, like the Federal Rules of Civil Procedure, "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).

Stated differently, "a complaint is sufficient against a motion to dismiss under Rule 12(b)(6), if it appears from the complaint that the plaintiff may be entitled to *any form of relief*, even though the particular relief he has demanded and the theory on which he seems to rely are not appropriate." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1219 (3rd Ed. 2020) (emphasis added). As one court stated,

> if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Fresquez v. Minks*, 567 F. App'x 662, 664 (10th Cir. 2014).

Finally, a pleading is only required to provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). *See also*

19

*Refrigerated Trans., Inc. v. North Carolina Occidental Fire and Cas. Co.*, 705 F.2d 821, 825 (6th Cir. 1983) (The function of a pleading is "to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved."). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512. *See also Sticklen v. Kittle*, 168 W. Va. 147, 163, 287 S.E.2d 148, 157 (1981) ("Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.").

Having stated these guidelines, we wish to make one point clear: our simplified pleading standard is not an excuse for "carelessly drafted or baseless pleading[s]." *Stricklen*, 168 W. Va. at 164, 287 S.E.2d at 157-58. Importantly, Rule 11 of the West Virginia Rules of Civil Procedure obligates an attorney to sign every pleading presented to a court. When an attorney files the pleading with the court, he

> is certifying that to the best of his knowledge, information, and belief formed after an inquiry reasonable under the circumstances that . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a *non-frivolous* argument for the extension, modification, or reversal of existing law or the establishment of new law.

(Emphasis added). A court may, on its own initiative, "call out" behavior by an attorney or self-represented litigant that appears to violate Rule 11, and may impose sanctions

20

"sufficient to deter repetition of such conduct or comparable conduct by those similarly situated." W. Va. R. Civ. P. 11(c)(2).

## B. Claims against Respondent Beam

The petitioners argue that the circuit court erred in granting Mr. Beam's motion to dismiss the petitioners' crossclaims. In his summary response, Mr. Beam asserts that the petitioners "filed carelessly drafted, unsupported, nonsensical and spurious pleadings," and that dismissal of the pleading was warranted. To resolve this dispute, we, like the circuit court, assess the allegations made by the petitioners.

The petitioners' pleading repeatedly alleges that respondent Joe Beam opened a City National checking account in 2013 without the knowledge of or authorization from Mountaineer Fire, Brian Cavender, and Walter Cavender. West Virginia's laws regarding member-managed limited liability companies like Mountaineer Fire specifically provide that "[e]ach member has equal rights in the management and conduct of the company's business[.]" W. Va. Code § 31B-4-404(a)(1) (1996). The petitioners allege that Mr. Beam violated this statutory duty when he opened the 2013 account.

Moreover, the petitioners' pleading also alleges that Mr. Beam presented City National with the unauthorized, partially-completed 2013 Resolution suggesting that only Mr. Beam had authority over Mountaineer Fire's accounts. The pleading indicates that as a result of this "unauthorized revocation of Brian Cavender's authority over all [of]

21

Mountaineer Fire's deposit accounts and funds on deposit . . . Brian Cavender could no longer confirm Mountaineer Fire's deposits of its sales income or payments made[.]" The pleading continues that, without notice to or permission from the petitioners, Mr. Beam "made undisclosed and unapproved distributions in payment to his related business interests for services," actions the plaintiffs indicate violated West Virginia Code § 31B-4-403, which says a member of a limited liability company "is not entitled to remuneration for services performed[.]" After the petitioners parted company with Mr. Beam (that is, sometime after May 31, 2017), the petitioners allege Mr. Beam claimed Mountaineer Fire still owed him $90,000 for services performed for the company.

In the first, specific count of their pleading against Mr. Beam, the petitioners averred generally that Mr. Beam committed multiple violations of the fiduciary duties owed to Mountaineer Fire and the Cavenders. West Virginia Code § 31B-4-409(a) provides that "[t]he only fiduciary duties a member owes to a member-managed company and its other members are the duty of loyalty and the duty of care[.]"[6] Petitioners' pleading

---

[6] West Virginia Code § 31B-4-409(a), (b), and (c) (1996) imposes the following duties on members of limited liability companies:

> (a) The only fiduciary duties a member owes to a member-managed company and its other members are the duty of loyalty and the duty of care imposed by subsections (b) and (c) of this section.
>
> (b) A member's duty of loyalty to a member-managed company and its other members is limited to the following:

Continued . . .

22

contains sufficient factual allegations to support a claim that Mr. Beam, while a member of Mountaineer Fire, breached his statutorily-imposed fiduciary duties toward Mountaineer Fire and his fellow members, the Cavenders.

The petitioners' second count generally alleges that "Joe Beam's acts and omissions as described herein constitute the unlawful conversion of Mountaineer Fire's funds" on deposit with City National. "The tortious or unlawful taking of personal property, and the exercise of ownership and dominion over it, against the consent of the owner is, in law, a conversion of the property[.]" Syl. pt. 1, *Arnold v. Kelly*, 4 W. Va. 642 (1871). Throughout their pleading, the petitioners assert that Mr. Beam used the City

---

(1) To account to the company and to hold as trustee for it any property, profit or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity;

(2) To refrain from dealing with the company in the conduct or winding up of the company's business as or on behalf of a party having an interest adverse to the company; and

(3) To refrain from competing with the company in the conduct of the company's business before the dissolution of the company.

(c) A member's duty of care to a member-managed company and its other members in the conduct of and winding up of the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of law.

23

National accounts to secretly disburse Mountaineer Fire's funds to himself and to his own separate businesses. For example, Mr. Beam allegedly used Mountaineer Fire funds to pay an engineer employed by one of his related business interests. The petitioners also claim Mr. Beam "unlawfully converted $55,000" to his own use from the sale of a fire truck by Mountaineer Fire. Taking the petitioners' allegations as true, sufficient facts have been averred which would justify a finding that Mr. Beam took money belonging to Mountaineer Fire and exercised ownership and dominion over it, without consent of a majority of the company's members.

We pause here to note that the circuit court focused on a typographic blunder by the petitioners in both of their first two counts against Mr. Beam. The petitioners asserted that, "[f]or purposes presented here the duty of loyalty and the duty of care . . . include the duties set forth under West Virginia Code 31B-4-409*(a)(1)* and *(2)(a)(b)* and *(c)*." (Emphasis added). Obviously, this is an improper citation because West Virginia Code § 31B-4-409(a), quoted earlier in footnote 5, is composed of a single sentence and has no subsections (1) or (2). However, despite the text of Section 409(a) clearly imposing fiduciary duties of loyalty and care, the circuit court dismissed the first and second counts, in part, because Sections "'409(a)(1) and (2)(a)(b) and (c)' do not exist, and thus are not valid law under which relief could be granted or under which duties could be assigned[.]" Neither Rule 8(a) nor Rule 12(b)(6) countenance dismissal of a complaint merely because it imperfectly states the legal theory supporting the claim asserted, or improperly cites to the relevant statutory authority. We find the circuit court clearly erred because, despite the

partially inaccurate statutory citation, the allegations as a whole call for relief against Mr. Beam. The pleading provides fair notice of what the petitioners' claims are and the grounds upon which they rest. Accordingly, we reverse and reinstate the petitioners' first and second claims against Mr. Beam.

Like the petitioners' second count, the third count also alleges conversion. The petitioners' pleading describes that when Mountaineer Fire was formed in 2011, Brian Cavender contributed $100,000 of fire safety rescue equipment to the company, as well as two vehicles and other equipment. Their pleading asserts that Mr. Beam secretly "sold equipment owned by Mountaineer Fire that had been contributed by Brian Cavender and failed to disclose these sales or account for payments received or deliver the payments received to Mountaineer Fire." The petitioners claim Mr. Beam's acts and omissions "constitute an unlawful conversion of personal property for his personal use and/or benefit and/or the use and/or benefit of his related business interest[s.]"

Mr. Beam argues that the circuit court correctly found that the petitioners failed to "specifically allege, with any particularity whatsoever, any specific acts of 'conversion[.]'" We note, however, that Rule 8 eschews technical, hyper-specific pleading and only requires a pleader to provide notice by way of "a short and plain statement of the claim" that is "simple, concise and direct." The petitioners' counterclaims define property that was given to Mountaineer Fire, and their pleading alleges that respondent Beam converted that property to his own use. We therefore reverse the circuit court and reinstate the petitioners' third count.

25

The fourth crossclaim asserted by the petitioners was that Mr. Beam's acts and omissions "constitute tortious interference with Mountaineer Fire's business operation[s]" following Mr. Beam's agreement to withdraw as a member of Mountaineer Fire. The petitioners claim that after Mr. Beam withdrew from the company, Mr. Beam continued to use Mountaineer Fire's checking account to make deposits and to disburse money to himself. The pleading alleges that Mr. Beam's actions forced Mountaineer Fire to materially breach a commission contract with a third party, and adversely and materially affected the company's relationship with that third party. The pleading also alleges that, at some point, Mr. Beam hired counsel to initiate legal action against a customer of Mountaineer Fire. That legal action was unsuccessful, and the customer is demanding payment of its legal fees as well as refusing to accept sales calls from Mountaineer Fire. Other customers in the area have also, allegedly, stopped accepting Mountaineer Fire's sales calls. Finally, the petitioners contend in their pleading that on December 20, 2017, Mr. Beam filed documents with the Secretary of State adding his name as a member of Mountaineer Fire and falsely certifying that he was "duly authorized" to do so.

The circuit court dismissed this counterclaim because the petitioners had failed "to allege the necessary elements so as to show a *prima facie* case of tortious interference," ostensibly because the petitioners identified no contractual or business relationship that was interfered with by Mr. Beam. We have held that, to establish a prima facie claim of tortious interference, a plaintiff must show:

> (1) existence of a contractual or business relationship or expectancy;

26

(2) an intentional act of interference by a party outside that relationship or expectancy;

(3) proof that the interference caused the harm sustained; and

(4) damages.

Syllabus Point 2, in part, *Torbett v. Wheeling Dollar Sav. & Tr. Co.*, 173 W. Va. 210, 314 S.E.2d 166 (1983). However, a plaintiff is not required to establish a prima facie case at the pleading stage. Instead, the circuit court should examine the allegations as a whole to determine whether they call for relief on any possible theory, and it may not dismiss a complaint where sufficient facts have been alleged that, if proven, would entitle the plaintiff to relief.

We have carefully examined the allegations regarding tortious interference in the petitioners' pleading and, while we do not find them to be models of artful drafting, we do find that they sufficiently allege facts that, if proven, would entitle the petitioners to relief. The petitioners have alleged that Mr. Beam intentionally interfered with business relationships and expectancies, particularly after Mr. Beam left Mountaineer Fire, acts that harmed Mountaineer Fire's business prospects.

Finally, we examine the petitioners' last crossclaim against Mr. Beam which alleges fraud. This is the one count in the pleadings that gives us pause. Rule 9(b) of the West Virginia Rules of Civil Procedure requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." As we have said, "A pleading which includes a claim of fraud requires more than the short, plain statement

27

of the claim contemplated under Rule 8(a)(1)." *Highmark W. Virginia, Inc. v. Jamie*, 221 W. Va. 487, 493, 655 S.E.2d 509, 515 (2007). *See also*, *Kessel v. Leavitt*, 204 W. Va. 95, 132, 511 S.E.2d 720, 757 (1998) (when a party alleges that he/she has been injured by the fraud or fraudulent conduct of another, "the circumstances constituting fraud . . . [must] be stated with particularity."). To *prove* a claim of fraud, a plaintiff must establish

> (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Syl. pt. 1, in part, *Lengyel v. Lint*, 167 W. Va. 272, 280 S.E.2d 66 (1981).

However, pleading a claim of fraud is substantially different from proving a claim of fraud. A plaintiff does not need to prove a claim of fraud at the pleading stage; rather he needs to articulate the claim with enough particularity so that the defending party can properly respond. The petitioners' fraud count is sparse, and says nothing more than that Mr. Beam's "acts and/or omissions described herein constitute fraud[.]" Standing alone, we might hold that this count fails to meet the heightened pleading requirements of Rule 9(b). However, the petitioners' pleading, taken as a whole, fleshes out the bare-bones averment of fraud. As we have already said, the pleading adequately notifies Mr. Beam that the petitioners intend to show he induced the Cavenders into a long-term scheme to fraudulently siphon funds from Mountaineer Fire's accounts for his own use, that the petitioners unwittingly relied upon Mr. Beam, and that they suffered to their detriment. We

28

find the circuit court erred in ruling that the allegation was insufficient, but leave it to the parties, at the discovery stage, to clarify and narrow this claim.

In summary, Mr. Beam failed to establish beyond doubt that the petitioners' pleading does not state a claim upon which relief may be granted. We therefore reverse the circuit court's order dismissing the petitioners' crossclaims.

### C.  Claims against Respondent City National

To reiterate, City National initiated this case with a complaint for interpleader. City National contends that this case is nothing more than a dispute between the Cavenders on one side and Mr. Beam on the other, haggling over around $5,130 in Mountaineer Fire's checking accounts. City National asserts it has "no dog in this fight," that it wants to deposit the money with the circuit court, and then be dismissed.

The petitioners' pleading, however, asserts that City National bears some responsibility for Mr. Beam's actions. As we noted, City National promptly moved, pursuant to Rule 12(b)(6), to dismiss the petitioners' counterclaims. However, City National attached various exhibits to the motion. These exhibits fall into three categories: (1) copies of the 2011 and 2013 Resolutions; (2) the applications and contracts to open the 2011 and 2013 accounts at City National; and (3) copies of checks and checking account statements. City National argues that these documents are integral to the petitioners' claims and, therefore, could be considered by the circuit court. The petitioners, however,

29

argue that the circuit court should have either (1) not considered the documents, or (2) reviewed the motion as one for summary judgment pursuant to Rule 56.

As we have extensively discussed above, Rule 12(b)(6) permits a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Rule 12(b)(7) of the Rules of Civil Procedure further provides that:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The general rule is, therefore, that circuit courts considering motions under Rule 12(b)(6) should confine their review to the four corners of the complaint or other disputed pleading and may not consider extraneous documents. As this Court has held:

> Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith. . . .

Syl. pt. 4, in part, *United States Fid. & Guar. Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965) (*overruled on other grounds by Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (1975)). *See also* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[3], at 354 (3d ed. 2008) ("Only matters contained in the pleading can be considered on a

motion to dismiss under Rule 12(b)(6). However, if matters outside the pleading are presented to the court and are not excluded by it, the motion must be treated as one for summary judgment and disposed of under Rule 56.").

This Court has recognized, however, a limited exception to this rule: a court may review documents annexed to a pleading. Rule 10(c) of the Rules of Civil Procedure provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." We therefore held in Syllabus Point 1 of *Forshey v. Jackson*, 222 W. Va. 743, 671 S.E.2d 748 (2008), that "[a] circuit court ruling on a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure may properly consider exhibits attached to the complaint without converting the motion to a Rule 56 motion for summary judgment."

Rule 10(c) is permissive, and a plaintiff is under no obligation to attach to the pleading documents upon which the action is based. "However, a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). In *Forshey*, we discussed additional circumstances where a trial court could review extraneous exhibits – exhibits *not* attached to the pleading but instead attached to the motion to dismiss – without converting the Rule 12(b)(6) dismissal motion into one for summary judgment. We noted that, for purposes of Rule 12(b)(6),

> the complaint is deemed to include any written instrument
> attached to it as an exhibit or any statements or documents
> incorporated in it by reference. Even where a document is not
> incorporated by reference, the court may nevertheless consider
> it where the complaint "relies heavily upon its terms and

31

effect," which renders the document "integral" to the complaint. . . .

> [G]enerally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered. Accordingly, where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated. . . . [O]n a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit. Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.

*Forshey v. Jackson*, 222 W. Va. at 748, 671 S.E.2d at 753 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (cleaned up)). As one court stated succinctly

> When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).

*Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998). *See also*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) ("Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." (Cleaned up)); *Marder v. Lopez*, 450 F.3d 445,

32

448 (9th Cir. 2006) (When considering a motion to dismiss, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). This rule is necessary because, "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

Before relying on extraneous materials attached to a motion to dismiss, a trial court must be assured that the authenticity of the materials is undisputed. If the materials are of questionable provenance or are subject to competing interpretations, courts should avoid factoring them into their equation. "[A] ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Further, the trial court must ensure that the pleading party had notice of the extraneous materials.

> A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since, as noted earlier, the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason— requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where

33

> plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

We therefore hold that, when a movant makes a motion to dismiss a pleading pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, and attaches to the motion a document that is outside of the pleading, a court may consider the document only if (1) the pleading implicitly or explicitly refers to the document; (2) the document is integral to the pleading's allegations; and (3) no party questions the authenticity of the document. If a document does not meet these requirements, the circuit court must either expressly disregard the document or treat the motion as one for summary judgment as required by Rule 12(b)(7).

A question remains, however, as to what standard of review applies to a circuit court's decision to review a document outside the pleadings. As noted above, cases have consistently recognized that a trial court *can* or *may*, but *is not required* to, consider documents outside of the pleadings. In other words, consideration of documents outside the pleadings is discretionary. Accordingly, we conclude that a circuit court's decision whether or not to review a document outside of the pleadings, which is attached to a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, will be reviewed for an abuse of discretion.

34

We now turn to the three categories of documents City National attached to its motion to dismiss. First, City National attached copies of the 2011 and 2013 Resolutions. The record indicates that City National provided copies of the resolutions to the petitioners before litigation commenced. Moreover, in drafting their pleading, the petitioners specifically relied upon, and quoted extensively from, both resolutions. Hence, the circuit court was absolutely within its discretion to consider both resolutions when making its decision.

Second, City National attached copies of account documentation, including applications signed by Brian Cavender and Mr. Beam in 2011, and signed by Mr. Beam alone in 2013. These applications incorporate contractual terms. City National provided copies of this account documentation to the petitioners before litigation began. In drafting their pleading, the petitioners made repeated references to the "Authorized Account" (the 2011 account) and the "Unauthorized Account" (the 2013 account). The petitioners also noted that the documents included copies of Mountaineer Fire's articles of organization and copies of the 2011 and 2013 Resolutions. The petitioners otherwise made no specific reference to these documents.

City National, however, contends that the petitioners generally relied on those documents to state their breach of contract claim. After examining the petitioners' pleading as a whole, we agree. The petitioners shaped many of the allegations in their pleading using those documents. Accordingly, the circuit court did not abuse its discretion in considering the account documents.

35

Third, City National incorporated copies of canceled checks and account statements into its motion to dismiss as well as a later reply. City National noted that the petitioners repeatedly claimed in their pleading that they were unaware Mr. Bean had opened the 2013 account. However, City National argued that the petitioners knew about the account and that their claim was "fraudulent." In support, City National produced copies of checks drawn against the 2013 account that were signed by Mr. Beam on behalf of Mountaineer Fire and made payable to Brian or Walter Cavender. City National argued this evidence proved that the petitioners' counterclaims were an "attempt to extort" City National. City National also attached copies of account statements. The petitioners responded that, while the Cavenders may have cashed those checks, they did not know the checks were being drawn from an unauthorized account. Moreover, the petitioners argued that although they had never seen the account statements, the statements supported their case. For example, they showed that after Mr. Beam parted ways with Mountaineer Fire, and after the petitioners demanded that City National close the account, Mr. Beam continued to deposit customer checks payable to Mountaineer Fire into the account and make payments to himself.[7]

---

[7] The petitioners argued that the statements showed Mountaineer Fire customer payments totaling $6,500 were deposited into the account after May 31, 2017. Petitioners allege Mr. Beam made deposits in July, October and November 2017. Mr. Beam appears to have paid himself – or as the petitioners allege, converted – $1,394 on July 19, 2017.

The petitioners also pointed out that the bank statements revealed, for the first time, a conversion of funds by Mr. Beam on March 16, 2017, of $38,285.

We find it was improper for City National to have included the checks and bank statements in its motion to dismiss, and it was an abuse of discretion for the circuit court to have considered them in any fashion. The petitioners' counterclaims did not refer to these documents, and the documents were not integral to the petitioners' allegations. More significantly, the parties were substantially at odds regarding the interpretation to be given to the documents. City National proffered the documents to show the petitioners were "bad actors," while the petitioners (who had never seen many of the documents and had no notice of their contents) viewed the documents as additional evidence of City National's and Mr. Beam's liability. The circuit court should have rejected City National's proffer of these documents or converted the motion to dismiss into one for summary judgment under Rule 56, as required by Rule 12(b)(7).

We now turn to the petitioners' contention that the circuit court erred in dismissing their three counterclaims against City National under Rule 12(b)(6). The petitioners' first count asserted breach of contract[8] and of the duty of good faith and fair dealing.[9] The circuit court dismissed the count in part because the petitioners failed

---

[8] "A claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." *Sneberger v. Morrison*, 235 W. Va. 654, 669, 776 S.E.2d 156, 171 (2015).

[9] "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Restatement (Second) of Contracts* § 205 (1981). "Good faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing." W. Va. Code § 46-1-201(20). As the *Restatement (Second) of Contracts* § 205, cmt. d, puts it:

Continued . . .

37

"identify a single term of the contract allegedly breached." City National does not claim that there is no such thing as a cause of action for "breach of contract," nor does it claim there was no contract between the parties. It simply argues that the petitioners failed to identify any specific contractual provision.

We concede that the petitioners' claim is poorly drafted. However, as we discussed earlier in this opinion, a plaintiff pleading a claim has no duty to plead a *prima facie* case. In other words, a plaintiff has no duty to specify precisely which term or paragraph of the contract was breached in order to properly state a claim; a plaintiff must only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests.

> Generally, a plaintiff alleging breach of contract is required only to state a sufficient factual basis for the claim to put the defendants on notice and allow them to frame a response. Thus, a complaint in an action on a contract which alleges the contract, performance by the plaintiff, and failure to perform on the part of the defendant, resulting in damage to the plaintiff, is good against a motion to dismiss for insufficiency. Specifics of the contract, such as the date it was formed and specifics of the contract's terms and transactions made under the contract, need not be pled.

---

> Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

38

61A Am. Jur. 2d Pleading § 208. *See also* Tracy Bateman, *et al.*, 27 Federal Procedure L. Ed. § 62:62 (2020). Viewing the pleading as a whole, the petitioners alleged that they made an agreement with City National that the 2011 Resolution gave Brian Cavender authority over any Mountaineer Fire checking account. The pleading further asserts that, despite that agreement, after May 2017 City National refused Brian Cavender's requests to close the 2013 account or to pay out the proceeds of the account. The petitioners also claim that, because Mr. Beam continued to use that account, they suffered damages due to City National's refusal to abide by the resolution. Moreover, City National cannot, and does not, plead surprise, confusion, or lack of notice regarding the breach claim; its entire argument is based on the poor quality of drafting in the petitioners' pleading. We therefore conclude that the petitioners properly stated a claim for breach of contract and of the duty of good faith and fair dealing.[10]

The second count of the petitioners' pleading is that City National aided and abetted Mr. Beam's breach of his fiduciary duties to Mountaineer Fire and the Cavenders. The petitioners have sufficiently alleged that Mr. Beam had statutorily imposed fiduciary duties, and that he breached those duties. They have further alleged that Mr. Beam used the 2013 account at City National to accomplish his misdeeds, and that City National knew

---

[10] We do not intend to limit the parties to this interpretation of the pleading through the subsequent course of this case. Rather, under Rule 12(b)(6), this is but one reasonable interpretation of the pleading, such that the circuit court should have denied City National's motion and concluded that the petitioners had pleaded a claim upon which relief could be granted.

about the misconduct. Moreover, after May 2017, despite no longer being part of the company, the petitioners allege City National did nothing to stop Mr. Beam but, instead, allowed the misconduct to continue. The circuit court, however, did not address these contentions. It simply concluded that City National had no fiduciary duty to monitor its accounts and could not be held liable. We find the circuit court's conclusion to be clearly wrong. The petitioners are not asserting City National violated a fiduciary duty; they claim City National assisted a third party in breaching the third party's duty. Viewing the counterclaims as a whole, the petitioners asserted that (1) Mr. Beam breached his corporate, fiduciary duties toward Mountaineer Fire, (2) City National knew or should have known he was acting against the interests of Mountaineer Fire, and (3) City National assisted that breach. We find the petitioners have stated a claim upon which relief could be granted and, therefore, permit the claims to be developed below.[11]

---

[11] This Court has found that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Syl. pt. 5, *Courtney v. Courtney*, 186 W. Va. 597, 413 S.E.2d 418 (1991). However, neither party has suggested the precise elements of a cause of action for aiding and abetting the breach of a fiduciary duty. While we reach no conclusion, our research reveals that other courts have recognized the action as a stand-alone tort. *See, e.g.*, *Sierra Enterprises Inc. v. SWO & ISM, LLC*, 264 F. Supp. 3d 826, 838-39 (W.D. Ky. 2017) ("Kentucky law recognizes a claim for aiding and abetting tortious conduct, which covers fiduciary-breach claims. To prevail on this claim, Plaintiffs must show: (1) the existence and breach of a fiduciary duty; (2) the defendant gave the breaching party substantial assistance or encouragement in effectuating the breach; and (3) the defendant knew that the party's conduct breached that fiduciary duty." (Cleaned up)); *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 81 N.E.3d 782, 793 (Mass. App. 2017) ("The elements of the tort of aiding and abetting a breach of fiduciary duty are: (1) there must be a breach of fiduciary duty; (2) the defendants must know of the breach; and (3) the

Continued . . .

Third, and finally, the petitioners alleged that City National aided and abetted tortious interference by Mr. Beam with Mountaineer Fire's business relations. City National argued, and the circuit court accepted in dismissing the third count, that the petitioners failed to identify any contractual or business relationship alleged to have been interfered with by Mr. Beam. Additionally, the circuit court adopted City National's argument that the petitioners, Mr. Beam, and City National were all parties to a contractual relationship, and one cannot tortiously interfere with one's own relationship. *See* Syl. pt. 1, *Shrewsbery v. Nat'l Grange Mut. Ins. Co.*, 183 W. Va. 322, 395 S.E.2d 745 (1990) ("It is impossible for one party to a contract to maintain against the other party to the contract a claim for tortious interference with the parties' own contract; each party has agreed to be bound by the terms of the contract itself, and may not thereafter use a tort action to punish the other party for actions that are within its rights under the contract.").

We find the circuit court erred in dismissing the third count of the petitioners' pleading against City National. The pleading identifies contracts or business relationships

---

defendants must have actively participated or substantially assisted in or encouraged the breach to such a degree that they could not reasonably have been acting in good faith."); *Nasrawi v. Buck Consultants LLC*, 179 Cal. Rptr. 3d 813, 824 (Cal. App. 2014) ("A defendant is liable for aiding and abetting another in the commission of an intentional tort, including a breach of fiduciary duty, if the defendant knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act. The elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." (Cleaned up)).

that are separate from the agreements between the petitioners and Mr. Beam, or between City National, Mr. Beam and the petitioners. For example, the petitioners allege that Mr. Beam converted $55,000 from the sale of a fire truck, causing Mountaineer Fire to breach an agreement to pay a $10,000 commission to a third party. Mr. Beam also appears to have pursued a collection action against a customer of Mountaineer Fire's without authorization, and in the process destroyed the petitioners' business relationship with that customer and with similar customers nearby. The petitioners contend that Mr. Beam could not have accomplished these tortious acts without assistance from City National and the 2013 account. We therefore conclude that the petitioners have sufficiently alleged a claim for aiding and abetting tortious interference.

## IV. Conclusion

In summary, we find that the petitioners' pleading stated a sufficient basis upon which relief could be granted if the facts, as alleged, are proven. Respondents failed to show beyond doubt that the petitioners can prove no set of facts in support of their claims which would entitle them to relief.

Accordingly, the circuit court's September 26, 2018, orders, granting respondents' motions to dismiss pursuant to Rule 12(b)(6), are reversed, and the case is remanded for further proceedings.

Reversed and remanded.